The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Cesar I. PASILLAS–SANCHEZ,
Defendant–Appellant.

No. 05CA2625.

Colorado Court of Appeals,
Div. III.

March 19, 2009.

Certiorari Denied Aug. 31, 2009.

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge STERNBERG.*

Defendant, Cesar I. Pasillas–Sanchez, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree murder, three counts of possession of a controlled substance, two counts of

theft by receiving, and three special offender counts. He also appeals the sentence imposed. We affirm.

In March 2003, defendant's girlfriend of three years was found dead as a result of a single gunshot to the head. Defendant called the police and reported that she had shot herself. When police arrived on the scene, they found a handgun under the left hand of the victim, who was right-handed. Police found drugs and drug paraphernalia, as well as numerous items of stolen property, including expensive bicycles and electronics. Defendant was subsequently charged with first degree murder, two counts of theft by receiving, three counts of possession of a controlled substance, and three counts as a special offender.

At trial, defendant's theory was that the victim had committed suicide. The People's theory was that the relationship between defendant and the victim had been deteriorating and defendant had shot her, either to prevent her from leaving him or to keep her quiet about his theft and drug activity. To support that theory, the People presented extensive evidence about the nature and status of the relationship between defendant and the victim, as well as scientific and forensic analysis of the crime scene and gunshot wound to show it was not self-inflicted.

After a twenty-three-day jury trial, defendant was convicted of the lesser included offense of second degree murder, two counts of theft by receiving, three counts of possession of a controlled substance, and three counts as a special offender. He was acquitted of a charge of witness intimidation. Defendant was subsequently sentenced to an aggregate of ninety-six years in the Department of Corrections.

*I. Disqualification of Counsel*

Defendant first contends that the trial court reversibly erred when, prior to trial, it prohibited one of his attorneys, Donald Lozow, from testifying while still acting as counsel at trial and subsequently disqualify-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

ing him when he elected to testify. We disagree.

## A. Background Facts

Lozow was initially retained to represent defendant in this case in early 2003. A second attorney, Thomas Carberry, was retained in March 2004 to assist Lozow. In April 2004, the People filed a motion indicating that they intended to offer evidence of defendant's prior bad acts, including one culminating in an October 2002 drug arrest and defendant's guilty plea to a lesser charge. At the hearing on the People's motion, Lozow stated that he had represented defendant in that earlier case and was concerned that there would be a conflict.

Defendant then asked that Lozow be permitted to testify. He initially proposed that the jury could be given a stipulated instruction that contained the undisputed facts to which Lozow intended to testify. Lozow offered, as undisputed facts, that (1) he represented defendant in the prior matter; (2) the victim paid for the prior representation; (3) defendant was a legal resident, but not a citizen; (4) a drug crime conviction would have resulted in deportation; (5) defendant pleaded guilty to trespass on agricultural lands; and (6) a conviction for trespass to agricultural lands could not be a ground for deportation. Defendant further argued that the fact that the victim hired Lozow to represent defendant in a drug case shortly before her death could lead to the inference that she knew of his drug use and still stayed with him.

The People conceded only that defendant's status as a legal resident was undisputed. They refused to stipulate to the remaining facts because they were taken out of context and raised additional questions (such as the victim's motivation and her knowledge of the consequences of her actions) that could not be answered by Lozow.

At the hearing, Lozow continued to argue that his testimony would be used to rebut the People's evidence showing (1) the victim wanted to leave defendant and was concerned about his drug habits and (2) the victim was "instrumental in keeping [defen-dant] in the country by providing certain information."

The trial court found that, under Colo. RPC 3.7(a), Lozow would be unable to both continue representing defendant and testify at trial and that none of the exceptions to that rule was applicable here. It further found that a conflict existed between Lozow and defendant which was unwaivable. Defendant elected to have Lozow testify. The court subsequently issued an order discharging Lozow. At trial, Lozow testified consistently with his offer of proof and was subject to cross-examination.

## B. Analysis

■ Disqualification of counsel is a matter within the trial court's discretion. *Fognani v. Young,* 115 P.3d 1268, 1271–72 (Colo.2005). A court abuses its discretion only if it makes a manifestly arbitrary, unreasonable, or unfair decision. *People v. Dunlap,* 124 P.3d 780, 798–99 (Colo.App.2004).

■ The Sixth Amendment right of criminal defendants to counsel of their choice is not absolute; courts have an independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *People v. Frisco,* 119 P.3d 1093, 1095 (Colo.2005); *see People v. Harlan,* 54 P.3d 871, 876 (Colo. 2002) (disqualification of a defendant's counsel of choice takes place to remedy situations in which continued representation would in some way "tarnish the judicial process"). Disqualification is proper when it appears reasonably necessary to ensure "the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system." *People v. Garcia,* 698 P.2d 801, 806 (Colo.1985) (quoting *People ex rel. Younger v. Superior Court,* 86 Cal.App.3d 180, 150 Cal.Rptr. 156, 158 (1978)).

A number of attorney ethical proscriptions, including those that prevent attorneys from acting in conflicting roles, have developed "precisely to ensure fairness and loyalty to the parties and protect the integrity of the

process," and serve as important guides in the exercise of a court's discretion to disqualify counsel. *In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo.2006) (discussing inherent powers of court to regulate attorney conduct).

Under the "advocate-witness" ethical rule, subject to limited exceptions, an attorney cannot maintain dual roles as advocate and witness in the same matter before the same tribunal. *Fognani*, 115 P.3d at 1272. This principle has been codified as Colo. RPC 3.7, which states in relevant part:

Rule 3.7 Lawyer as Witness

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

■ The very purpose of the rule is to avoid the confusion that results for a jury when the lawyer acts in the dual roles of witness and advocate. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F.Supp.2d 1170, 1173 (D.Colo.2003); *see also* Rule 3.7 cmt. 2 (explaining that a witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others). The moving party has the burden to establish grounds for disqualification and must allege facts that demonstrate a potential violation of this rule. *Fognani*, 115 P.3d at 1272.

■ Determining whether counsel is "likely to be a necessary witness" is based not on subjective trial strategy, but on the circumstances of the particular case. *Id.* at 1274. The court must consider the nature of the case, with emphasis on (1) the subject of the lawyer's testimony; (2) the weight the testimony might have in resolving disputed issues; and (3) the availability of other witnesses or documentary evidence that might independently establish the relevant issues. *Id.; see also Religious Tech. Ctr. v. F.A.C.T.*

*Net, Inc.*, 945 F.Supp. 1470, 1474 (D.Colo. 1996) (an attorney is "likely to be a necessary witness" where the testimony is not merely cumulative); *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F.Supp. 1297, 1302 (D.Colo.1994) (lawyer is necessary witness where testimony is relevant, material, and unobtainable elsewhere).

■ Here, although the trial court did not make an explicit finding as to the necessity of Lozow's testimony, the court found that (1) the subject of Lozow's testimony was how the victim had approached him to offer information helpful in preventing defendant from being deported as a result of a drug conviction; (2) this testimony was material to a central issue in the case, that is, the nature of the relationship between defendant and the victim; and (3) defendant and Lozow were the only two people who could testify to this information. The facts and circumstances of this case demonstrate that the trial court did not abuse its discretion in finding that Lozow was likely to be a necessary witness on defendant's behalf.

However, a determination that the lawyer's testimony is necessary to the proceeding does not automatically disqualify the lawyer. The lawyer may assume the dual role at trial if at least one of the exceptions enumerated in Colo. RPC 3.7(a) is satisfied. *See Fognani*, 115 P.3d at 1274.

The second exception is not at issue. Therefore we evaluate whether either Lozow's testimony was about an uncontested issue or his disqualification would be a substantial hardship to defendant.

### 1. Uncontested Issue

The first exception to Rule 3.7(a) allows an attorney to testify where the testimony "relates to an uncontested issue," and recognizes that the general exclusionary purpose of the rule is inapplicable to such testimony. CBA Comm. on Ethics, Formal Op. 78 (1997). We look to the rule's predecessor to determine what the term "uncontested" means.

■ This exception combines two exceptions enumerated in the predecessor to the

rules of professional conduct, the Colorado Code of Professional Responsibility, codified as DR 5–101(B). Formal Op. 78. Under that code, the lawyer could testify at a proceeding in which he or she was an advocate if the testimony would relate solely to an uncontested matter or would relate solely to a "matter of formality" and there was no reason to believe that "substantial evidence will be offered in opposition of the testimony." DR 5–101(B). Courts have long recognized that under that code, there was "no practical distinction between these two exceptions." Formal Op. 78 (citing *Nakasian v. Incontrade, Inc.*, 78 F.R.D. 229, 232 (S.D.N.Y. 1978)). Therefore, we conclude that, in this context, "uncontested" means unopposed or not an issue at trial. *See* CRE 201 (citing, as appropriate for judicial notice, facts that are not "subject to reasonable dispute" in that they are either generally known or capable of "accurate and ready determination" through sources not subject to question); *Webster's Third New International Dictionary* 2486 (2002) (uncontested defined as "unchallenged"). The exception, then, accommodates the fact that if the attorney's testimony will be uncontested, the ambiguities that exist in the dual role are "purely theoretical." Colo. RPC 3.7 cmt. 3.

Here, the crux of defendant's argument is that Lozow was going to testify only to uncontested *facts*, and then argue to the jury the *inference* the jury should draw from those fact—namely, that the victim wanted to maintain her relationship with defendant. The People, however, respond that defendant misreads Colo. RPC 3.7(a). They argue that the rule contemplates not just that the *facts* be undisputed, but that those facts go to an *issue* that is undisputed and that, here, the facts and issues to which Lozow intended to testify—namely, the nature and status of defendant's relationship with the victim—were in dispute.

We agree with the People. First, we observe that even if defendant's interpretation were correct, the facts to which Lozow testified were not uncontested. Aside from defendant's immigration status, which the People conceded, the remainder of Lozow's testimony consisted of his impressions and recounting of his conversations and interactions with the victim, which the People maintained were not established facts. As the victim could not be called to clarify or refute Lozow's testimony, it was far from the "unchallenged" or easily verified facts to which the rule applies.

■ Furthermore, the language of Colo. RPC 3.7(a)(1) contemplates that the *issue* be uncontested and does not mention the facts to which the witness testifies. If the rule were to be read as allowing an attorney to testify to undisputed facts to support a disputed issue, the exception would swallow the rule: an attorney could testify to any number of undisputed facts but still argue the importance of those facts in resolving a contested issue. This would go against the purpose of the rule, thereby creating a situation where a defendant's lawyer would be called upon to argue his own veracity and credibility in resolving a contested issue. We therefore conclude that, in order for an attorney to testify at a proceeding in which the attorney is an advocate, the *issue* to which the attorney testifies must be uncontested, not merely the facts.

■ Here, the trial court found that (1) Lozow's offer of proof was that the victim produced information that assisted Lozow in negotiating a plea bargain that would allow defendant to remain in the country; (2) the inference to be drawn from those facts was that the victim did not want him deported and "inferentially" would want him to remain in the country; and (3) Lozow's testimony would be offered to rebut the People's evidence that the victim was "disgusted" with defendant's drug problem and wanted to get away from him. The court further found that this testimony related to "not simply a contested issue, but the very central issue in the case"—the nature and status of the relationship between defendant and the victim—and would be relevant to "the heart of the truth as to whether this was a homicide or a suicide."

We agree with the trial court that Lozow's testimony would not have related to an uncontested issue in this case and therefore perceive no abuse of discretion in its conclu-

sion that the first exception to Colo. RPC 3.7(a) does not apply here.

### 2. Hardship

The third exception to Colo. RPC 3.7(a) permits an attorney to maintain a dual role in the proceedings if disqualification would "work substantial hardship on the client," *Fognani*, 115 at 1275, and recognizes that a "balancing is required between the interests of the client and those of the tribunal and the opposing party." Rule 3.7(a) cmt. 4. This exception is the "least clear-cut and poses the greatest difficulties in application." American Bar Association, *Annotated Model Rules of Professional Conduct* 388 (5th ed.2003).

■ Determining whether disqualification would cause substantial hardship requires a court to consider all relevant factors in light of the specific facts before the court, including (1) the nature of the case; (2) the financial hardship to the client, giving weight to the stage of the proceedings at which the disqualification is requested; (3) the time at which the attorney became aware of the likelihood of his testimony; and (4) whether client has secured alternative representation. *Fognani*, 115 P.3d at 1275; *see also* Ronald D. Rotunda & John S. Dzienkowski, *The Lawyer's Deskbook on Professional Responsibility* § 3.7–1, at 802 (2008) (noting the value or need for a particular lawyer and the timing of the disqualification as sources of potential hardship).

■ Here, the trial court found that it was much more likely that "the non disqualification of [Lozow] ... would in fact work a substantial hardship on [defendant]." In reaching this conclusion, the court found that (1) defendant was still represented by Carberry, and so he would retain at least one counsel of choice; (2) there were only two sources of information on this issue—Lozow and defendant; and (3) it would undercut defendant's opportunity to freely choose whether to testify at trial if Lozow remained as counsel.

Under these factual circumstances, we conclude that there is adequate basis in the record to support the trial court's conclusion that preventing Lozow from testifying would not be a substantial hardship on defendant, and we perceive no abuse of discretion.

Hence, the trial court did not abuse its discretion in disqualifying Lozow from representing defendant altogether.

In analyzing Colo. RPC 3.7, the general conflict of interest rule, Colo. RPC 1.7, must also be considered. Formal Op. 78. As relevant here, that rule permits an attorney to obtain the client's consent, in certain situations, to waive a conflict. Under the version of Colo. RPC 1.7 in effect at defendant's trial, the lawyer "must be mindful that 'a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation.'" *Id.* (quoting Colo. RPC 1.7(c) (2003) ).

■ Disqualification of a defendant's counsel of choice is utilized to remedy situations in which continued representation would in some way "'taint[ ]' the trial or legal system." *Taylor v. Grogan*, 900 P.2d 60, 63 (Colo.1995). The critical question in determining whether disqualification is warranted is whether the litigation can be conducted in fairness to all parties. *Harlan*, 54 P.3d at 876. The court should consider (1) the defendant's preference for a particular counsel; (2) the public's interest in maintaining the integrity of the judicial process; and (3) the nature of the particular conflict of interest involved. *Rodriguez v. Dist. Court*, 719 P.2d 699, 706–07 (Colo.1986). But the presence of a real and substantial conflict that places an attorney in a situation inherently "conducive to and productive of divided loyalties" is an important consideration. *Harlan*, 54 P.3d at 877; *see also* Formal Op. 78 (referencing prior version of Colo. RPC 1.7 cmt. 4 that "[l]oyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests").

■ Here, the court found there was an "actual and substantial conflict" between defendant and Lozow that could not be waived. The court determined that, while defendant was clearly entitled to counsel of his choos-

ing, Lozow was the sole source of the information, other than defendant, and allowing Lozow to continue the representation would undermine the public's interest in maintaining the integrity in the judicial system because of the violation of Colo. RPC 3.7(a). The court assigned independent counsel to determine whether the conflict could be waived, and that counsel determined that Lozow's testimony "could be critical and even outcome determinative if believed by the jury." The court concluded this was a conflict that defendant could not waive.

We agree with the trial court and perceive no abuse of discretion. Lozow was a critical witness to establish defendant's defense. If Lozow were prohibited from testifying, it would have been fundamentally unfair to allow him to continue to represent defendant, thereby leaving defendant as the only remaining source of "critical and outcome determinative information."

We therefore conclude there was no error in the court's determination that Lozow could not both testify and represent defendant and in his ultimate disqualification.

## II. Discovery Violation

Defendant contends that the trial court erred in (1) ruling the prosecution was not required to disclose notes made by its investigator at an interview with defendant's expert and (2) failing to impose sanctions for the discovery violation. We disagree.

The notes at issue here were taken during an interview by the prosecutor and his investigator of an already endorsed defense expert. The notes pertained to findings in the expert witness's report, including whether the expert agreed with certain of the People's expert's findings on (1) the position of the victim's body when she was shot; (2) a bloody handprint on the grip of the gun; and (3) the difficulty of self-inflicting the victim's wound. These findings were material to the issue of whether the victim's death was a suicide or homicide.

The prosecutor, over defense objection, relied on these notes during cross-examination of the expert about that conversation. The notes had not been previously disclosed to defendant. Defendant moved for a mistrial and asked, as a sanction, that the murder counts be dismissed, although counsel felt he would be able to "cure a lot of this stuff."

Defendant further argued that the notes should have been disclosed to him prior to trial because they were recorded statements of witnesses that the People were under a duty to disclose under Crim. P. 16. The People conceded that, because the notes had been used for impeachment, they were now discoverable, but maintained that they were under no obligation to disclose them earlier.

The trial court ruled that because the notes did not fit within the specifically enumerated categories of Crim. P. 16(I)(A)(1), they were not automatically discoverable by defendant and there was no discovery violation. It further noted that there was no Colorado case law on the issue and that, as a result of defendant's failure to request any notes of the prosecution's interview, the People could have reasonably believed that disclosure was not required. It also found that defendant had suffered no prejudice because the notes were disclosed during the People's cross-examination and defendant had adequate time (overnight) to review them and could rehabilitate the expert on redirect examination. The court also declined to impose sanctions.

Crim. P. 16 provides, as pertinent here, an accused with three potential means for obtaining information—automatic disclosure of all witness statements, automatic disclosure of information favorable to the defendant, and disclosure within the discretion of the court. See Crim. P. 16(I)(a)(1)-(d)(1); People v. Dist. Court, 790 P.2d 332, 336–38 (Colo. 1990). Assuming, without deciding, that there was a violation of that discovery rule here, and the investigator's notes should have been disclosed to defendant prior to trial, we evaluate whether defendant was prejudiced by this error.

■ Because neither party argues that this error was of constitutional magnitude, we review the proceedings to determine whether there is a reasonable probability that the error contributed to defendant's conviction. Salcedo v. People, 999 P.2d 833, 841

(Colo.2000). An error is harmless when it does not affect substantial rights of the defendant. Crim. P. 52(a). The proper inquiry in determining whether an error is harmless is whether the error substantially influenced the verdict or affected the fairness of the proceedings. *Salcedo*, 999 P.2d at 841.

Here, defendant does not argue that he would not have called the expert had he been aware that the notes would be used. Rather, he simply argues that his trial strategy may have been different because, had he received the notes prior to trial, he could have "supplemented or clarified" them in his direct examination of the expert to prevent any misinterpretation.

■■■ We agree with the trial court that the error, if any, was harmless. The notes were provided to defendant at noon in the midst of the People's cross-examination of the expert, at which time the court adjourned, leaving defendant adequate time to prepare for redirect examination the next day. Prior to resuming trial the following morning, at defense counsel's request, the court instructed the jury that the defense had been allowed to receive a copy of the notes and had an opportunity to review them. On redirect, defendant was given and took the opportunity to fully rehabilitate the expert by clarifying exactly what was said during the conversation with the prosecutor and the investigator and to have the expert explain any inconsistencies. Finally, defendant was given an additional opportunity to follow up on testimony after the People's recross-examination.

We thus conclude that defendant suffered no prejudice because he was given ample opportunity to clarify the expert's testimony and the error, if any, was harmless. We therefore need not address defendant's contention regarding sanctions.

### III. Challenge for Cause

■■■ We disagree with defendant that the trial court erred when it denied his challenge for cause to a prospective juror who was the first cousin of the investigating police department's chief of police.

During voir dire, a prospective juror stated that her first cousin was a commander in the police department that investigated the case. Defense counsel asked her whether that would affect her decision-making abilities, given that there were allegations of "sloppy" police work in this case, and she responded that she had "no opinion one way or the other about how he did his job." However, the next day, the juror volunteered that, after further thought, her relationship with her aunt (the mother of the chief of police) "probably could create a problem" and could create a hardship for her. However, the juror then added that she could fairly try the case and could be impartial.

Defendant challenged the juror for cause, which the trial court denied because it found the juror "understood her duty" and it would not impose a hardship on her. Defendant then exercised his first peremptory challenge against the juror and subsequently exhausted all of his other peremptory challenges.

■■■ A trial court's ruling on a challenge for cause is reviewed for an abuse of discretion, and we accord that decision great deference. *People v. Young*, 16 P.3d 821, 824 (Colo.2001); *Morrison v. People*, 19 P.3d 668, 672 (Colo.2000).

■■■ A trial court is required to sustain a challenge for cause if the prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict. *People v. Lefebre*, 5 P.3d 295, 299 (Colo.2000); *see* § 16–10–103(1)(a)–(k), C.R.S.2008; Crim. P. 24(b)(1)(X). Two forms of bias may exist in potential jurors—implied (that is, bias conclusively presumed as a matter of law) and actual (that is, bias in fact). *Lefebre*, 5 P.3d at 300; *People v. Macrander*, 828 P.2d 234, 238 (Colo.1992).

We are not persuaded by defendant that there was implied bias. Implied bias is limited to those relationships defined in section 16–10–103(1)(a)–(i) and (k) and Crim. P. 24(b)(1)(I)(IX) and (XII). *Lefebre*, 5 P.3d at 300 (these sections outline factors that constitute implied bias); *Macrander*, 828 P.2d at 239 (section 16–10–103(1) includes grounds of various implied bias). Because the relation-

ship described by the prospective juror is not included among those exhaustive lists, we perceive no abuse of discretion.

Similarly, we are also not persuaded by defendant that there was actual bias. Actual bias is a state of mind that prevents a juror from deciding the case impartially and without prejudice to a substantial right of one of the parties. *Macrander*, 828 P.2d at 238; *see* § 16–10–103(1)(j) (actual bias is the existence of a state of mind in the juror evincing enmity or bias toward the defendant or state). The juror's statements must be viewed in their totality when considering evidence of actual bias. *People v. Sandoval*, 733 P.2d 319, 321 (Colo.1987).

Here, the potential juror indicated that, despite the difficulties she would have in setting aside her feelings for her family members, she could still be impartial and fairly try the case, and there is no reason to believe she could not render a fair and impartial verdict. We therefore conclude there was no abuse of discretion.

### IV.  Joinder

We disagree with defendant that the trial court abused its discretion when it denied his motion to sever the theft by receiving counts from his murder trial.

Prior to trial, defendant moved to sever the theft and drug charges and renewed his motion during trial. He argued that those charges had no logical or legal relevance to the murder charge and would not be admissible if the charges were tried separately. He also argued that he might want to testify in his defense against one, but not all, of the charges, and that the joinder of the charges would unconstitutionally burden his right against self-incrimination.

■ Whether to grant a motion to sever is within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *People v. Kendall*, 174 P.3d 791, 795 (Colo.App.2007); *People v. Rosa*, 928 P.2d 1365, 1373 (Colo. App.1996). An abuse of discretion occurs when (1) the joinder caused actual prejudice to the defendant, not merely a difference in trial strategy arising from the joint trial of

separate offenses, and (2) the trier of fact was not able to separate the facts and legal principles applicable to each offense. *People v. Aalbu*, 696 P.2d 796, 806 (Colo.1985); *Rosa*, 928 P.2d at 1373.

■ In denying the motion, the trial court found that the evidence on the theft counts was interrelated to the homicide charges. Specifically, it found that (1) the crimes were interconnected because the stolen property was in plain view when the police arrived to investigate the homicide; (2) the stolen property and drugs were potential evidence from which a jury could infer a motive (specifically, that the victim had knowledge of the stolen property); (3) the prosecution could present evidence of motive during the murder trial; (4) the gun used to kill the victim was stolen; (5) such evidence was res gestae; and (6) defendant would have a fair trial without severing the theft counts.

Defendant has not shown any prejudice in this case. He has not specifically pointed us to any occasion on which the joint trial of the issues resulted in any actual prejudice against him, and on appeal, he only argues that his trial strategy (as to when to testify) was impacted. Furthermore, the jury returned a verdict on second degree murder, as opposed to first degree murder, indicating it was able to separate the different legal principles and apply them to the necessary facts for each offense. We therefore perceive no abuse of discretion.

### V.  Sentencing

Last, we also disagree with defendant that the trial court abused its discretion by imposing consecutive sentences for his three drug convictions, despite the relatively small quantities of drugs.

■ Sentencing is a discretionary function, and the trial court is afforded wide latitude in imposing sentence. *People v. Martinez*, 179 P.3d 23, 25 (Colo.App.2007). A sentencing court has the discretion to impose a sentence to be served consecutively to a sentence already imposed. *Id.; People v. Thomas*, 916 P.2d 582, 585 (Colo.App.1995).

In exercising its discretion, the court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence. *People v. McAfee,* 104 P.3d 226, 232 (Colo.App.2004). However, the court need not engage in a point-by-point discussion of every factor relevant to its sentencing decision; a reasonable explanation for the sentence will suffice. *Id.; People v. Walker,* 724 P.2d 666, 669 (Colo. 1986).

Here, the trial court sentenced defendant to forty-eight years for the second degree murder conviction, along with three consecutive twelve-year terms for the drug convictions and an additional twelve-year term for the two theft convictions (which were merged).

In doing so, it placed great importance on the fact that defendant had "an unfortunate drug problem," which involved multiple drugs and ultimately led to the victim's death "in one way or another," and was "relentless in his pursuit of drugs." The court further found that defendant had a prior felony conviction and indicated that, when it sentenced defendants on drug cases, it was not "to be punitive necessarily, but to see if there was any way to salvage them from being led to experience an incident such as this."

Because the sentence imposed is within the range required by law and was based on appropriate considerations supported by the record, we perceive no abuse of discretion.

The judgment and sentence are affirmed.

Judge LOEB and Judge MILLER concur.