21CA1243 Peo v Smith 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1243
Jefferson County District Court No. 18CR3904
Honorable Jeffrey R. Pilkington, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony James Smith,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Lum and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Andrew Gargano, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Anthony James Smith, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of sexual assault on a child by one in a position of trust involving a victim less than fifteen years old, along with three counts of child abuse. We affirm.

## I.     Background

¶ 2     In 2018, M.P., Smith's stepdaughter, told her maternal aunt that Smith sexually assaulted her. M.P.'s aunt contacted the police and, after an investigation, Smith was arrested and charged with sexual assault. During the investigation, Smith's two biological daughters, G.S. and E.S., were interviewed. Neither child initially disclosed any instances of sexual abuse, but they both later revealed to their psychotherapist that Smith had sexually assaulted them. The prosecutor subsequently moved to amend the information to include additional counts naming G.S. and E.S. as victims. Through counsel, Smith consented to the joinder of these charges. Later, however, after he obtained a new attorney, Smith moved to sever the charges into three separate cases, one for each child. The motion was denied.

¶ 3    At trial, Smith theorized that (1) the three children fabricated the allegations of sexual assault to escape their unhealthy home environment and their parents' neglect, and (2) the specific allegations made by the children were influenced by leading, suggestive questioning by other adults.  Consistent with these theories, Smith requested and received instructions on the lesser nonincluded charge of child abuse and asked the jury to convict him of only that offense.

¶ 4    The jury found Smith guilty on all counts and the trial court subsequently sentenced him to twenty years to life in the custody of the Department of Corrections.  Smith appeals, contending that the trial court reversibly erred by (1) joining, and then failing to sever, the charges as to each victim, (2) allowing improper opinion testimony from the prosecution's expert witness, and (3) limiting the testimony of the defense's expert witness.  He also argues that (4) the cumulative effect of the errors he has alleged deprived him of a fair trial.  We address each of Smith's contentions below.

## II.    Joinder

¶ 5    Smith contends the trial court reversibly erred when it allowed the prosecution to amend the complaint to join the charges

involving each of the three children.  We do not address this contention on the merits because we conclude it was waived.

### A.    Additional Facts

¶ 6      As originally filed, the charges against Smith named M.P. as the sole victim.  During pretrial discovery on the charges involving M.P., Smith's counsel repeatedly requested documents detailing statements that G.S. and E.S. made to investigators during the investigation that was triggered by M.P.'s outcry.  Although counsel was aware that G.S. and E.S. had both reported sexual abuse by Smith, his goal was to show that their stories — like M.P.'s — had changed over time, and that each child's delayed outcry was actually the result of suggestion by their psychotherapists or other adults.

¶ 7      Because, at the outset of the case, Smith only faced charges related to M.P., the trial court initially denied Smith's requests on relevance grounds.  Nevertheless, Smith's counsel continued to push for the discovery, arguing that it was relevant to his trial strategy.  After it became clear that Smith's counsel wanted evidence of G.S.'s and E.S.'s allegations admitted into evidence, the prosecutor moved to amend the complaint to include charges of

sexual assault related to G.S.'s and E.S.'s allegations. Although defense counsel stated that he did not "want . . . the additional charges to be filed," he agreed that joinder "would be more effective and more efficient" and stated that he "would have no objection to joining those charges with these charges."

## B. Analysis

¶ 8    Waiver is "the *intentional* relinquishment of a *known* right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). "A waiver may be explicit, as, for example, when a party expressly abandons an existing right or privilege, or it may be implied, as when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Forgette v. People*, 2023 CO 4, ¶ 28.

¶ 9    Smith's counsel explicitly waived this issue by stating that he had "no objection" to joining the soon-to-be-added charges involving G.S. and E.S. to the existing charges involving M.P. *See People v. Lopez*, 2024 COA 26, ¶ 40 (issue waived by counsel's concession at trial); *People v. Quillen*, 2023 COA 22M, ¶ 51 (issue whether record admitted into evidence should have been redacted was waived

where the prosecutor offered to make redactions, but defense counsel declined the offer). The record demonstrates that counsel's decision not to object was part of his trial strategy. Indeed, his strategic approach to the case depended on his ability to highlight similarities in the evolution of each child's story over time. Counsel made it plain that he was willing to accede to joinder if doing so would make discovery related to G.S. and E.S. — which he hoped would support this strategy — available.

¶ 10 "[W]aiver extinguishes error, and therefore appellate review." *Rediger*, ¶ 40. By agreeing that impending charges involving G.S. and E.S. could be joined with the existing charges involving M.P., Smith's counsel waived the issue, and we need not consider it further.

## III. Severance

¶ 11 Smith contends that the trial court erred by denying his motion to sever the charges against him. We disagree.

## A. Additional Facts

¶ 12 Some time after the prosecution amended the complaint to add the charges involving G.S. and E.S., Smith's original counsel retired from the practice of law and a new attorney was appointed.

Smith's new attorney moved to sever the counts involving each victim into three separate trials. The trial court denied the motion.

## B. Standard of Review and Applicable Law

¶ 13 Crim. P. 14 governs a defendant's motion to sever charges into separate trials. Crim. P. 14 provides that, "[i]f it appears that a defendant or the prosecution is prejudiced by a joinder of offenses . . . in any indictment or information, or by such joined for trial together, the court may order an election or separate trials of counts . . . ." Like a trial court's decision to permissively join charges, "[w]hether to grant a motion to sever is within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion." *People v. Pasillas-Sanchez*, 214 P.3d 520, 530 (Colo. App. 2009). "An abuse of discretion occurs when (1) the joinder caused actual prejudice to the defendant, not merely a difference in trial strategy arising from the joint trial of separate offenses, and (2) the trier of fact was not able to separate the facts and legal principles applicable to each offense." *Id.* The defendant is not prejudiced if evidence of each offense would have been admissible in separate trials. *Buell v. People*, 2019 CO 27, ¶¶ 30-31.

## C. Analysis

¶ 14    In a written order denying Smith's motion to sever, the court concluded that Smith would not be actually prejudiced by a joint trial for the following reasons:

- The three counts and evidence were interconnected by time, actions, locations, and participants.

- Smith had "continue[d] to request that evidence of the sexual assaults of the three child victims be admitted at trial, whether the trial be for a single child victim or multiple trials for each child victim."

- Smith did not make a showing that he had important testimony to give regarding the charges involving one of the children and a strong need to refrain from testifying on another.

¶ 15    The court also found that the evidence involving each child would be cross-admissible as res gestae because it would "help[] the jury understand the nature of the sexual assaults." Then, turning to the second element of the test under Crim. P. 14, the court found that Smith did not establish that the jury would be unable to separate the facts and legal principles as to each count.

### 1. CRE 404(b)

¶ 16    To determine whether the trial court properly denied Smith's motion for severance, we must first address the changes in law since the court issued its order.  The trial court's ruling rested at least in part on the res gestae doctrine, which the Colorado Supreme Court abolished in 2022.  *See Rojas v. People*, 2022 CO 8, ¶¶ 40-41.  This change occurred after Smith's trial on the joint charges but while his direct appeal was still pending.  Thus, *Rojas* applies retroactively as controlling law for Smith's appeal.  *See People v. Morse*, 2023 COA 27, ¶ 51 ("Although *Rojas* was decided after [the defendant's] trial, judicial decisions generally apply retroactively to cases on direct appeal.  And indeed, the supreme court applied its holding in *Rojas* to the prior trial in that case.") (citation omitted); *Rojas*, ¶¶ 53-56.  Accordingly, rather than deciding whether the trial court erred in applying the law at the time it ruled by partially relying on res gestae, we review its rulings under the new scheme established in *Rojas*.

¶ 17    Because *Rojas* abolished res gestae, Colorado courts must now determine whether other acts evidence triggers a Rule 404(b) analysis by determining whether the evidence is "intrinsic or

extrinsic to the charged [offense]." *Rojas*, ¶ 52. "Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it." *Id.* "Evidence of acts that are intrinsic to the charged offense are exempt from Rule 404(b) because they are not 'other' crimes, wrongs, or acts." *Id.*

¶ 18 The People do not address *Rojas* or res gestae in their appellate briefing, but they do argue that the evidence of each incident would have been cross-admissible in separate trials because it was admissible under CRE 404(b). Thus, we do not consider whether the evidence of each incident would have been admissible in separate trials because it was intrinsic to each offense, but instead conduct a CRE 404(b) analysis.

¶ 19 Other acts evidence is admissible under *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990), if (1) the evidence relates to a material fact, (2) the evidence is logically relevant, (3) the logical relevance is independent of the prohibited intermediate inference that the defendant was acting in conformity with his bad character, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See Bondsteel v.*

*People*, 2019 CO 26, ¶ 50 (citing *Spoto*, 795 P.2d at 1318). All four elements of the *Spoto* test are met here.

¶ 20    First, the evidence involving each child tended to show that each offense was part of a common scheme or plan, and thus related to a material fact. "In order for two or more acts to constitute a scheme, they must have a nexus with each other from which a continuous scheme or common design can be discerned." *People v. George*, 2017 COA 75, ¶ 83 (quoting *People v. Close*, 867 P.2d 82, 87 (Colo. App. 1993)). The prosecution's evidence established that nexus. It included allegations by G.S. and E.S. that Smith inappropriately touched the outside of their vaginas in a similar manner, multiple times (and often at bedtime), in different areas of the home while they were under his care. Evidence relating to M.P.'s allegations was broader and more extensive, but it also included incidents of Smith inappropriately touching the outside of her vagina, multiple times, in different areas of the home while she was under his care, often at bedtime.

¶ 21    Second, the evidence was logically relevant. The General Assembly "has expressly noted that evidence of other sexual acts is particularly important and will typically be admissible in the

prosecution of sexual offenses." *Bondsteel*, ¶ 48 (citing § 16-10-301(1), C.R.S. 2024). And here, the similarities between each of the children's allegations lent support to the prosecution's theory that the assaults shared a "common plan, scheme, design or modus operandi." § 16-10-301(3).

¶ 22 Third, the similarities in the children's allegations made it more likely than not that Smith committed each of the charged counts and provided evidence of Smith's guilt independent of the prohibited propensity inference. *Spoto*, 795 P.2d at 1318.

¶ 23 Fourth, based on our review of the record, we are convinced that the evidence concerning the assaults involving each child was highly probative, and the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. *Id.*; *see also* § 16-10-301(1) ("The general assembly finds that such evidence of other sexual acts is typically relevant and highly probative, and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time.").

¶ 24 Thus, although we rely on somewhat different grounds than the trial court in the wake of *Rojas*, we agree with its conclusion

that the evidence involving each child would have been cross-admissible in the event that the charges against Smith were severed.

## 2. Ability to Testify

¶ 25 Smith also contends that he suffered actual prejudice because he wanted to testify regarding some, but not all, of the counts against him, and the trial court did not offer to restrict cross-examination or provide a limiting instruction. In particular, Smith suggests that, had the charges involving E.S. been severed, he would have defended himself by testifying that the actions she described were not assaults but instead "culturally normative behavior." Smith acknowledges that he could not have offered the same sort of explanation regarding M.P.'s allegations. Thus, he claims, as a result of the trial court's refusal to sever the counts, he was forced to forgo rebutting E.S.'s allegations with his own testimony due to the risk of a broad cross-examination that covered his interactions with all of the children.

¶ 26 The trial court concluded that Smith failed to convincingly show he had "important testimony to give concerning one count and strong need to refrain from testifying on the other." *People v.*

12

*Walker*, 542 P.2d 1283, 1287 (Colo. 1975) (citation omitted). We agree with that conclusion and also observe that the cross-admissibility of the evidence involving each of the children undercuts Smith's suggestion that, had the counts been severed, the scope of his cross-examination could properly have been limited. In short, even if the court had granted Smith's motion to sever the charges, the evidence surrounding each charge would still have been admissible in all three of the cases. Thus, we are unpersuaded that the court's denial of the motion to sever could have had any practical effect on Smith's decision whether to testify in his own defense.

### 3. Ability to Separate Fact and Law

¶ 27 Smith also argues that denying his motion for severance created a risk that the jury would be unable to separate the facts and legal principles as to each count. To find an abuse of discretion, however, we must conclude both that the joinder resulted in actual prejudice *and* that the jury could not distinguish the facts and law applicable to each case. *Pasillas-Sanchez*, 214 P.3d at 530; *see also People v. Rosa*, 928 P.3d 1365, 1373 (Colo. App. 1996). As we have already explained, we do not believe that

13

Smith suffered actual prejudice from the joinder because even if the court had tried the cases separately, the jury would likely have heard evidence of the other crimes. *See Bondsteel*, ¶ 61. Because, to find an abuse of discretion, we must conclude both that the joinder resulted in actual prejudice *and* that the jury could not distinguish the facts and law applicable to each case, we need not address the latter.

### 4. Law of the Case

¶ 28 For two reasons, we also briefly reject Smith's argument that the court "departed from the law of the case without good cause" when it walked back its initial ruling that there was "[n]o way" that evidence relating to E.S. and G.S. would be admitted during the trial on the charges involving M.P. First, even if the court's comments were actually rulings — and that is not at all clear — the law of the case doctrine does not "prevent a court from revisiting its own prior rulings, particularly where those rulings are no longer sound due to changed conditions of law." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 23. And second, when the court made these comments, the prosecution had not yet filed charges against Smith for his conduct involving E.S. and G.S. Once

14

the prosecutor did so and the charges were joined for trial, the relevancy calculus shifted dramatically, and any constraints that might have been imposed by the doctrine of the law of the case no longer existed.

## IV.    Prosecution's Expert Testimony

¶ 29    Smith next contends the district court erred by permitting a prosecution expert, Suvi Miller, to testify as a generalized expert because (1) she was not qualified to do so, (2) her testimony was not helpful to the jury, and (3) her testimony served to bolster the credibility of M.P., G.S., and E.S.  We disagree.

## A.    Additional Facts

¶ 30    Before trial, the prosecution endorsed Miller as a generalized expert in child sex assault behavior.  Like all generalized experts, Miller was not familiar with the facts of the case and had not interviewed the children.  Instead, the prosecution offered her testimony in an effort to shed light on the nature of victim behavior that might seem counterintuitive to a lay juror.  Over a defense objection, the court admitted Miller as an "expert in child abuse and sexual behavior, dynamics, and response."

¶ 31    Miller's testimony addressed how child sexual assault victims generally disclose abuse.  She discussed delayed disclosure, including how often it occurs and why it happens, how age factors into disclosure, and what can trigger disclosure.  She also discussed behaviors of children who have been sexually assaulted, and children's memories in relation to traumatic events.

### B.    Standard of Review and Applicable Law

¶ 32    We review a trial court's evidentiary rulings for an abuse of discretion.  *Venalonzo v. People*, 2017 CO 9, ¶ 15.  We will reverse a decision if it is "manifestly arbitrary, unreasonable, or unfair."  *Id.*

¶ 33    CRE 702 governs the admission of expert testimony.  *People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011).  Exercising its gatekeeping function when deciding whether to admit expert evidence, a district court must "focus on the reliability and relevance of the proffered evidence" and determine "(1) the reliability of the scientific principles, (2) the qualifications of the witness, . . . (3) the usefulness of the testimony to the jury," and (4) whether the evidence meets the test of CRE 403.  *People v. Shreck*, 22 P.3d 68, 70 (Colo. 2001).

¶ 34    Proffered expert testimony is helpful if it will assist the fact finder to understand other evidence or determine a fact in issue. *People v. Cooper*, 2021 CO 69, ¶ 48. Helpfulness turns on whether the expert's testimony "fits the particular case." *Id.* at ¶ 49. Generalized expert testimony is permissible if the testimony "has a sufficient logical connection to the factual issues to be helpful to the jury while still clearing the ever-present CRE 403 admissibility bar." *Id.* at ¶ 3. Our case law recognizes that "'[a]n expert may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child,' . . . because it assists the jury in understanding the victim's behavior after the incident — why the victim acted the way he or she did." *People v. Short*, 2018 COA 47, ¶ 13 (citation omitted). This type of expert testimony "aid[s] the jury in understanding the typicality of reactions by [children] who have been subjected to sexual abuse that might, under other circumstances, be considered bizarre." *Id.* (citation omitted).

1.    Qualification As An Expert Witness

¶ 35    "Under CRE 702, an expert witness may be qualified through any of the five enumerated factors: knowledge, skill, experience, training, or education." *People v. Douglas*, 2015 COA 155, ¶ 71.

Such a witness is not required to hold a specific degree, training certificate, accreditation, or membership in a professional organization, in order to testify on a particular issue. *Id.* Instead, the witness need only provide an understandable explanation of his or her qualifications. *Id.*

¶ 36 Smith asserts that Miller was unqualified to testify as an expert in the fields of child abuse and sexual behavior, dynamics, and response because "she had no degree or certification in this field." The holding in *Douglas* puts that argument to rest. *Id.* And in any event, Smith concedes Miller has "a degree in social work and experience treating families and children on an outpatient basis as a licensed clinical social worker," and the record reflects that she provided a lengthy explanation of her qualifications and experience. The trial court therefore did not abuse its discretion in finding that she was qualified to testify under CRE 702.

### 2. Fit and Improper Bolstering

¶ 37 Smith next claims Miller's testimony improperly bolstered the victims' credibility rather than educate the jury and that her

testimony did not "fit" the case enough to help the jury determine facts at issue.[1]

¶ 38    Divisions of this court have routinely rejected arguments that expert testimony similar to what Miller presented in this case improperly bolstered victims' credibility. *See Short*, ¶¶ 10, 20 (holding a therapist who had no familiarity with the victim or facts of the case did not bolster the victim's testimony when she answered hypothetical questions regarding general sexual assault victims' disclosure patterns and inconsistent statements); *People v. Rail*, 2016 COA 24, ¶ 66 (considering similar testimony and observing that "numerous Colorado cases have upheld the admission of comparable expert testimony from similarly qualified experts, concluding that the testimony was helpful and not unfairly prejudicial"); *Glasser*, 293 P.3d at 78 (explaining that "expert

---

[1] As support for his bolstering argument, Smith relies heavily on the holding *Venalonzo v. People*, 2017 CO 9, in which the Colorado Supreme Court concluded that a forensic interviewer improperly bolstered the victims' testimony by asserting that many of the behaviors she observed were consistent with other child sex assault victims she'd interviewed. *Id.* at ¶ 35. *Venalonzo* is distinguishable, however, because it did not involve a generalized expert, but instead an expert who personally interviewed the victims and described their statements and demeanor as part of her testimony. *See People v. Short*, 2018 COA 47, ¶ 18.

testimony about the general behavior of sexual assault victims may be helpful to the jury and may therefore be admissible," and concluding the testimony was not unfairly prejudicial).

¶ 39     Miller's testimony in this case parallels the general experts' testimonies in *Short, Glasser,* and *Rail.* Miller was not familiar with the victims' allegations and had never met any of them. She limited her testimony to a general discussion of the behavior of sexual assault victims, contextualizing why sexual assault victims may delay reporting or appear to have faulty memories. And she did not opine as to the children's credibility or whether they had been sexually assaulted.

¶ 40     Miller's testimony was also a close "fit" to the facts of this case because it was helpful to the jury. Smith's theory of defense was that the children fabricated their allegations to escape their home life and that the evolution of their allegations over time was the result of suggestive questioning by other adults. During cross examination, defense counsel sought to undermine the victims' credibility by questioning their memories, sequencing of events, highlighting their delays in reporting assaults, and pointing out inconsistencies in their stories. Miller's testimony provided a

scientific, alternative explanation for the victims' behavior and allowed the jury to make an informed determination as to the plausibility of defense counsel's arguments.

¶ 41    Accordingly, we conclude that the trial court did not abuse its discretion when it admitted Miller's testimony. *See People v. Relaford*, 2016 COA 99, ¶ 31 (holding that testimony similar to what Miller offered in this case is considered proper because it "(1) relates to an issue apart from credibility and (2) only incidentally tends to corroborate a witness's testimony" (quoting *People v. Cernazanu*, 2015 COA 122, ¶ 20)); *Cooper*, ¶¶ 52-53, ("[G]eneralized expert testimony fits a case if it has a sufficient logical connection to the factual issues to be helpful to the jury while still clearing the ever-present CRE 403 admissibility bar . . . [but] the fit need not be perfect.").

## V.    Defense Expert Testimony

¶ 42    Smith argues the district court reversibly erred when it declined to recognize his expert witness, Susan Cave, in the field of child suggestibility and susceptibility, and instead found her qualified as an expert in the field of forensic child interviewing. He also contends that the court erred when it refused to allow Cave to

testify about the impact of the forensic interview on the children's disclosures. We disagree on both points.

### A. Standard of Review

¶ 43 We review a trial court's ruling on the admission of expert testimony for an abuse of discretion. *People v. Ruibal*, 2015 COA 55, ¶ 16, *aff'd*, 2018 CO 93. We apply the nonconstitutional harmless error standard to evidentiary rulings that do not prevent a defendant from subjecting the prosecution's case to meaningful adversarial testing. *See Krutsinger v. People*, 219 P.3d 1054, 1058 (Colo. 2009).

¶ 44 Under the nonconstitutional harmless error test, the defendant bears the burden of establishing that there was a reasonable probability that the court's error contributed to his conviction. *Short*, ¶ 54. A "reasonable probability" does not mean that it is "more likely than not" that the error caused the defendant's conviction; rather, it means only a probability sufficient to undermine confidence in the outcome of the case. *People v. Casias*, 2012 COA 117, ¶ 63.

## B. Scope of Qualification under CRE 702

¶ 45     Before trial, the defense endorsed Cave as an expert in "child forensic interviewing" and "child suggestibility and susceptibility." The prosecution objected, raising concerns over a letter from Cave that included an opinion about the credibility of one of the children during a forensic interview. In response, the defense clarified the scope of Cave's anticipated testimony and agreed that Cave should not opine on the credibility of the victim. In a reply, the prosecution stated that it did not object to Cave testifying about the proper procedures and protocol for conducting child forensic examinations and whether the interviewers in this case adhered to those procedures and protocols. The prosecution also stated that it would not object to testimony from Cave on "child susceptibility and suggestibility, generally."

¶ 46     At trial, the court refused to admit Cave as an expert in child suggestibility and susceptibility because it did not "think that is an area of expertise." The court did, however, admit Cave as an expert in the field of forensic interviewing, and she testified at length about proper procedures in forensic interviews that prevent and cause susceptibility.

¶ 47    Smith argues that the court abused its discretion by refusing to approve Cave as an expert in the area of child susceptibility and suggestibility despite the fact that this category of expertise has been recognized by courts in other jurisdictions. Assuming, without deciding, that the court's ruling was error, it was harmless. Simply put, the label put on Cave's category of expertise did not affect the scope of her testimony. And, as noted, Cave testified at length about the topics that the defense had proposed, and the trial court had already approved, in pretrial motions practice.

## C.    Barred Testimony

¶ 48    Lastly, Smith contends the trial court erred because it barred Cave's testimony on "the impact of the forensic interview on the children's disclosures" because the testimony went "to the credibility of the witnesses." According to Smith, when the court ruled, it improperly conflated the terms "reliability" and "credibility" and therefore improperly restricted the scope of Cave's testimony.

¶ 49    "In Colorado, neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion." *People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009). However, "general testimony about the *signs* of coaching, as

24

well as the presence or absence of those signs in the child victim at issue, preserves the ultimate credibility determination for the jury and therefore does not constitute vouching." *People v. Bridges*, 2014 COA 65, ¶ 16 (emphasis added) (citation omitted).

¶ 50    While addressing the scope of Cave's expert testimony at a pretrial hearing, the court noted that it would not permit expert testimony on "the impact of the forensic interview on the children's disclosures," a category that the defense had previously indicated Cave would discuss.  The court clarified that its ruling meant that Cave should not "get close to any opinions about these children.  I will shut it down."  The court then went on to reiterate that Cave could testify about (1) the correct forensic investigation procedures, (2) why these procedures must be in place, and (3) how the procedures were or were not followed.

¶ 51    We perceive no error in this ruling.  Colorado law is clear that "[a] witness may not opine with respect to whether another person was telling the truth on a specific occasion." *Cernazanu*, ¶ 11 (collecting cases).  To the extent that Smith contends that Cave should have been permitted to address the specifics of any of the

children's behavior during their interviews, the trial court appropriately prohibited her from doing so.

## VI. Cumulative Error

¶ 52     Smith contends that the cumulative effect of the trial court's errors requires reversal of his convictions. "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Carter*, 2015 COA 24M-2, ¶ 80 (citation omitted). Because the trial court here did not commit multiple errors, there was no cumulative error.

## VII. Disposition

¶ 53     We affirm the district court's judgment.

JUDGE LUM and JUDGE BERNARD concur.