Colorado Court of Appeals Opinions || October 22, 2015


Colorado Court of Appeals -- October 22, 2015
2015 COA 155. No. 14CA0135. People v. Douglas.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 155

 
 



 Court of Appeals No. 14CA0135
 Adams County District Court No. 11CR2041
 Honorable Katherine R. Delgado, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Susan Gail Douglas,

 Defendant-Appellant.


 JUDGMENT AFFIRMED

 Division I
 Opinion by JUDGE HARRIS
 Taubman and J. Jones, JJ., concur

 Announced October 22, 2015


 Cynthia H. Coffman, Attorney General, Jay C. Fisher, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 The Noble Law Firm, LLC, Antony Noble, Ruchi Kapoor, Denver, Colorado, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  Susan Gail Douglas appeals her conviction of possession with intent to manufacture or distribute less than five pounds of marijuana. Her primary contention on appeal is that the evidence was insufficient to prove the elements of the offense or to disprove her affirmative defense. She further contends that the district court erred in excluding the testimony of her expert witness and in admitting expert testimony from two police officers who testified as lay witnesses.

 Â¶2Â Â Â Â Â Â Â Â  We affirm.

 I. Background

 Â¶3Â Â Â Â Â Â Â Â  In June 2011, the Federal Heights Police Department received a tip regarding drug activity at the trailer home of common law spouses Michael Crawford and Susan Douglas. Officers conducted a search of trash removed from the property and found suspected marijuana leaves. A police SWAT team executed a search warrant on the home, where they found twenty-eight marijuana plants. Police also discovered a safe containing four firearms, $1000 in cash, recently-harvested marijuana that was in the process of drying, and bags with jars containing smaller amounts ofÂ marijuana. An additional firearm was found outside the safe, and another bag of marijuana was found in the kitchen pantry.

 Â¶4Â Â Â Â Â Â Â Â  The officers found medical marijuana application forms, approved by the Colorado Department of Public Health and Environment (the health department), for both Ms. Douglas and Mr. Crawford. The accompanying physicianâs statement indicated that each patient required twelve plants â twice the presumptive maximum under Colorado law â because they preferred to ingest marijuana through edibles rather than smoke it. Before trial, defendants obtained new physicianâs statements which indicated that each patient required eighteen plants.

 Â¶5Â Â Â Â Â Â Â Â  Both Ms. Douglas and Mr. Crawford were charged with one count of possession with intent to manufacture or distribute less than five pounds of marijuana and one special offender count based on the firearms found in the home. They were tried jointly in October 2013.

 Â¶6Â Â Â Â Â Â Â Â  Based on their status as medical marijuana patients registered with the health department, the defendants asserted an affirmative defense under sections 14(2)(a) and 14(4)(b) of the MedicalÂ Marijuana Amendment (Amendment), article XVIII of the Colorado Constitution. Both defendants were convicted of possession with intent to manufacture or distribute, but were acquitted of the special offender charge, with the jury specially finding that neither defendant âused, displayed, possessed on [his or] her person or within [his or] her immediate reach a deadly weapon at the time of the commission of the offense.â Ms. Douglas was sentenced to two yearsâ intensive supervision probation.

 II. Sufficiency of the Evidence

 Â¶7Â Â Â Â Â Â Â Â  Ms. Douglas contends that the evidence was insufficient to prove the elements of possession with intent to manufacture or distribute marijuana or to disprove her medical marijuana affirmative defense. We disagree.

 Â¶8Â Â Â Â Â Â Â Â  We review the record de novo to determine if the evidence was sufficient to support a conviction. Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005). In reviewing the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is both âsubstantial and sufficientâ to support the defendantâs guilt beyond a reasonableÂ doubt. Id. In applying this test, âwe must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence.â People v. Atencio, 140 P.3d 73, 75 (Colo. App. 2005).

 A. Sufficiency of the Evidence to Prove the Elements of Intent to Distribute

 Â¶9Â Â Â Â Â Â Â Â  To obtain a conviction for the offense of possession with intent to manufacture or distribute less than five pounds of marijuana, the prosecution had to prove beyond a reasonable doubt that Ms. Douglas (1) knowingly; (2) possessed, or attempted to possess, with intent to manufacture or distribute; (3) marijuana. Only the second element was seriously disputed at trial.

 Â¶10Â Â Â Â Â Â Â Â  The prosecutionâs theory was that Ms. Douglas and Mr. Crawford were fraudulently using their medical marijuana licenses to illegally distribute marijuana. In support of the theory, the prosecution pressed three primary arguments: that the amount of marijuana found at the residence was more consistent with distribution than with personal use; that the sophistication of theÂ defendantsâ marijuana grow[1] demonstrated that plants were being grown for distribution, not medical, purposes; and that the presence of guns and cash at the residence strongly suggested that the defendants were engaged in illegal distribution activities.

 Â¶11Â Â Â Â Â Â Â Â  The evidence underlying these arguments was not overwhelming, but we conclude that it was sufficient. With respect to the amount of marijuana, the prosecution established that Ms. Douglas and Mr. Crawford together possessed twenty-eight marijuana plants, which, according to the jury instructions, was more than twice the presumptive number permitted for medical use, and nearly twenty percent more than the number of plants allowed under their physicianâs certification.[2]

 Â¶12Â Â Â Â Â Â Â Â  The freshly-cut marijuana recovered from the defendantsâ home, once dried, weighed approximately two and one-half pounds,Â inclusive of all parts of the plant. In contrast, the presumptive amount permitted as medical marijuana is two ounces per person. Based on their combined prescriptions, which authorized each of them to possess twice the legal limit, Ms. Douglas and Mr. Crawford could legally possess a total of eight ounces of marijuana.

 Â¶13Â Â Â Â Â Â Â Â  The amount of usable marijuana in the bag was disputed. Mr. Crawford testified that he and Ms. Douglas did not use the leaves of the plants, while one of the prosecutionâs witnesses, Detective Patrick Murphy, testified that people commonly use the leaves of the marijuana plant to make edibles. But the jury instructions appeared to resolve the issue, defining âuseable form of marijuanaâ as âthe seeds, leaves, buds, and flowersâ of a marijuana plant, but not âthe plantâs stalks, stems, and roots.â A reasonable juror, therefore, was obliged to conclude that all parts of the dried marijuana plant in the bag, other than the stems, stalks, and roots, were usable marijuana for purposes of determining the quantity possessed by Ms. Douglas and Mr. Crawford. Although the prosecution did not provide the jury with any estimate of the weight of the usable portion of the marijuana, viewing the evidence in theÂ light most favorable to the prosecution, the jury could reasonably have determined that much of the two and one-half pounds of plant material in the bag was useable, distributable marijuana.

 Â¶14Â Â Â Â Â Â Â Â  Additional marijuana was found in the house, as well. A sizeable bag of dried marijuana was recovered from the pantry, and at least two smaller bags, which included jars labeled with the names of different marijuana strains, were found in the safe.

 Â¶15Â Â Â Â Â Â Â Â  In addition, the prosecution undercut the defendantsâ position that the large quantities of marijuana were necessary for making edibles. Detective John Browning testified that he searched the house for edibles, though not thoroughly, and found none.

 Â¶16Â Â Â Â Â Â Â Â  Based on this evidence, a reasonable jury could have concluded that the amount of marijuana in the house was more consistent with distribution than with personal use. See Atencio, 140 P.3d at 76 (possession of a large amount of controlled substances supported inference of intent to distribute).

 Â¶17Â Â Â Â Â Â Â Â  The prosecution also presented evidence that the defendantsâ marijuana grow was sophisticated and elaborate. The jury viewed a videotape of the execution of the search warrant, which depictedÂ plants at different stages of development growing in several areas of the house. A large proportion of the space appeared to be devoted to growing marijuana. The defendants had set up an irrigation system, fans, special lighting, and a venting system all within the small residence. The video highlighted that the plants were labeled and organized, and that Ms. Douglas and Mr. Crawford appeared to be keeping notes about the grow operation on a white board in one of the rooms.

 Â¶18Â Â Â Â Â Â Â Â  In addition, Detective Murphy testified that the grow operation at Ms. Douglasâs residence was not consistent with legitimate medical marijuana grow operations. He explained that generally medical marijuana grows were confined to one area of a residence, usually outside in a garage or shed, and that it was unusual for a medical marijuana grow to include separate areas designated for plants at different stages of development.

 Â¶19Â Â Â Â Â Â Â Â  The prosecution acknowledged the absence of distribution materials, like scales, baggies, and multiple cell phones, but introduced testimony that drug distributors commonly maintain separate production and distribution facilities.

 Â¶20Â Â Â Â Â Â Â Â  The jury could reasonably have concluded that Ms. Douglasâs marijuana grow was more consistent with a marijuana grow operated for distribution purposes than one operated for medical purposes.

 Â¶21Â Â Â Â Â Â Â Â  Finally, the prosecution emphasized the recovery of three operable guns and $1000 in cash from the residence. According to the prosecution, the $1000 in cash represented nearly a tenth of the defendantsâ total earnings in the preceding year and the guns were likely used to protect the defendantsâ illegal drug operation and their cash profits from their marijuana business.

 Â¶22Â Â Â Â Â Â Â Â  The jurors did not have to accept these arguments, and they clearly rejected the prosecutionâs theory that Ms. Douglas used, displayed, or possessed a gun at the time of the offense of distribution, but the inference was nonetheless permissible. The jury could have acquitted Ms. Douglas of the special offender count yet still inferred that the presence of guns made it more likely that Ms. Douglas and Mr. Crawford were distributing the marijuana rather than using it to treat their medical conditions. See, e.g., United States v. Reese, 145 F. Appâx 269, 274 (10th Cir. 2005)Â (considering the presence of loaded handgun as evidence of conspiracy to distribute cocaine even though jury acquitted the defendant of possessing a firearm in furtherance of drug trafficking); Commonwealth v. Williams, 864 N.E.2d 42 (Mass. App. Ct. 2007) (unpublished opinion)(finding that the presence of firearms supported inference that residence was used for illegal drug distribution despite insufficient evidence to convict the defendant of using a firearm during the commission of a felony).

 Â¶23Â Â Â Â Â Â Â Â  Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could have found that Ms. Douglas intended to distribute marijuana.

 B. Medical Marijuana Affirmative Defense

 Â¶24Â Â Â Â Â Â Â Â  Ms. Douglas also contends that she properly raised a medical marijuana affirmative defense, and that the prosecutionâs evidence was insufficient to disprove the defense beyond a reasonable doubt. To present an affirmative defense to the jury, a defendant must come forward with âsome credible evidenceâ to support the defense. People v. Garcia, 113 P.3d 775, 783-84 (Colo. 2005). Once theÂ defendant meets that burden, the prosecution must disprove the affirmative defense beyond a reasonable doubt. Id. at 784.

 Â¶25Â Â Â Â Â Â Â Â  At trial, the jury was instructed on an affirmative defense under the Amendment. Section 14(2)(a) provides an affirmative defense to possession with intent to manufacture or distribute marijuana if the defendant was a patient âpreviously diagnosed by a physician as having a debilitating medical conditionâ who was âadvised by the patientâs physician, in the context of a bona fide physician-patient relationship, that the patient might benefit from the medical use of marijuana in connection with a debilitating medical condition,â and was âcollectively in possession of amounts of marijuana only as permitted under this section.â Colo. Const. art. XVIII, Â§ 14(2)(a).

 Â¶26Â Â Â Â Â Â Â Â  Pursuant to this section, a medical marijuana patient is permitted to have no more than two ounces of useable marijuana and â[n]o more than six marijuana plants, with three or fewer being mature, flowering plants that are producing a useable form of marijuana.â Id. at Â§ 14(4)(a). A patient may have additionalÂ marijuana if a greater amount is âmedically necessary to address the patientâs debilitating medical condition.â Id. at Â§ 14(4)(b).

 Â¶27Â Â Â Â Â Â Â Â  This affirmative defense, however, is only available to patients who possess marijuana âas permittedâ by the Amendment. While patients may possess more than six plants if medically necessary, the affirmative defense only applies if the additional plants were authorized by a physicianâs certification. Fioco, Â¶Â¶21-22. A later-obtained physicianâs certification that additional plants are âmedically necessaryâ does not satisfy this requirement. Id. at Â¶Â¶23-25.

 Â¶28Â Â Â Â Â Â Â Â  The evidence was sufficient to disprove the affirmative defense beyond a reasonable doubt as it was uncontested that, at the time of the offense in June 2011, the defendants possessed more plants than permitted by the terms of their medical certifications, which specified that each patient needed â12 [plants] in possession for consumption.â Thus, Ms. Douglas and Mr. Crawford were, collectively, entitled to possess twenty-four plants.

 Â¶29Â Â Â Â Â Â Â Â  The undisputed evidence, however, demonstrated that they possessed twenty-eight marijuana plants.[3] Both Detective Browning and Detective Byron White testified that they found twenty-eight plants in the residence, and Mr. Crawford did not dispute this tally.[4] That a physician later recommended eighteen plants for each defendant is irrelevant. See id. at Â¶25. The prosecution therefore presented sufficient evidence to disprove the medical marijuana affirmative defense beyond a reasonable doubtÂ because defendants did not possess marijuana âas permittedâ by the Amendment.

 III. Expert Testimony from Lay Witnesses

 Â¶30Â Â Â Â Â Â Â Â  Ms. Douglas contends that the district court erred by admitting, as lay opinion testimony, what was actually expert opinion testimony from two police officers who were not properly qualified under CRE 702.

 A. Detective Browning

 Â¶31Â Â Â Â Â Â Â Â  Ms. Douglas first argues that three statements ? two explaining marijuana edibles and one explaining a common attribute of drug distribution organizations ? constituted expert opinion testimony in the guise of lay testimony. We agree that certain of the challenged testimony amounted to expert opinion testimony and that, because the officer was not qualified as an expert, the district court abused its discretion in admitting the testimony. However, because Ms. Douglas failed to properly preserve these issues for appeal, we review for plain error, and conclude that the error does not meet this standard.Â 

 Â¶32Â Â Â Â Â Â Â Â  Detective Browning, a ten-year veteran of the City of Thornton Police Department and a member of the North Metro Task Force, testified that he searched Ms. Douglasâs residence for marijuana plants and marijuana âedibles.â When asked to define edibles, Detective Browning responded:

 Itâs basically a diffuse product. When these individuals harvest the marijuana, as you saw in the pictures, thatâs basically the bud that they use, generally. . . . Generally, that part you saw in the photos, thatâs what they use to smoke â individuals smoking marijuana. Well, the leaves, the stems, they can use those.

 Defense counsel objected, arguing that Detective Browning was offering an expert opinion as a lay witness. Before the court could rule on the objection, the prosecutor interjected, âItâs based upon observations, Your Honor. Thatâs fine. I can streamline it.â He then continued his examination of the witness, asking, âDetective, essentially edibles are marijuana-infused products that people eat or drink, correct?,â to which the detective responded, âYeah. Candies, sodas, brownies, butter.â Defense counsel did not raise any further objection.

 Â¶33Â Â Â Â Â Â Â Â  On redirect examination, after Detective Browning had acknowledged the absence at Ms. Douglasâs home of any evidence typically associated with distribution of drugs (like scales or ledgers or baggies), the prosecutor asked whether it was âuncommon for a manufacturing site or production site to be at a different location than the distribution site[.]â Defense counsel objected to the question as irrelevant and beyond the scope of cross-examination, but did not assert that the question would elicit an expert opinion. The court overruled the relevance objection, and Detective Browning then explained, â[Y]ou can actually grow and distribute at the same location, or people grow it and then have a distribution center at a different location.â

 Â¶34Â Â Â Â Â Â Â Â  Ms. Douglas contends that each of these statements â that edibles are made from the leaves and stem of the marijuana plant; that edibles are typically candies, sodas, brownies, and butter; and that a production or grow site might be located separately from a distribution center â constituted expert opinion testimony, which could not be provided by Detective Browning, who had not been qualified as an expert. We agree in part.

 Â¶35Â Â Â Â Â Â Â Â  We review a trial courtâs evidentiary rulings for an abuse of discretion. The trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it applies the wrong legal standard. People v. Russell, 2014 COA 21M, Â¶22; Wal-Mart Stores, Inc. v. Crossgrove, 2012 CO 31, Â¶7.

 Â¶36Â Â Â Â Â Â Â Â  Whether the court abused its discretion turns on whether the officerâs testimony was improper under CRE 701, which governs the admission of opinion testimony by a lay witness, because that is the rule pursuant to which Detective Browning testified. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002).

 Â¶37Â Â Â Â Â Â Â Â  CRE 701 provides:

 If the witness is not testifying as an expert, the witnessâ testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witnessâ testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

 The critical inquiry under Rule 701 is whether a witnessâs testimony is based on âspecialized knowledgeâ: â[A] person may testify as a layÂ witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.â People v. Veren, 140 P.3d 131, 137 (Colo. App. 2005) (quoting LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004)).

 Â¶38Â Â Â Â Â Â Â Â  We have acknowledged that police officers may offer testimony under Rule 701 based on their âperceptions and experiences.â People v. Rincon, 140 P.3d 976, 982 (Colo. App. 2005) (citation omitted). However, because of the ruleâs prohibition on testimony based on specialized knowledge, a police officerâs testimony must be based on experience common to ordinary citizens, not experience unique to the witnessâs role as a police officer. People v. Ramos, 2012 COA 191, Â¶14 (cert. granted Feb. 18, 2014) (â[A] police officer may only offer opinion testimony under CRE 701 when the basis of that opinion arises from experiences or information common to the average lay person.â). In determining whether the opinion testimony is based on common experience or specialized knowledge-based experience, we consider whether ordinary citizens can be expected to have known the information or have had theÂ experiences that form the basis of the opinion. Veren, 140 P.3d at 137.

 Â¶39Â Â Â Â Â Â Â Â  With these legal principles in mind, we turn to the three statements at issue. We agree with Ms. Douglas that average citizens would not be expected to know which part of the marijuana plant is used to make edibles, or whether drug dealers commonly maintain separate production and distribution centers; therefore, Detective Browningâs first and third statements constituted expert testimony. See, e.g., People v. Pollard, 2013 COA 31M, Â¶48 (police officer must be qualified as expert to testify about street price of crack cocaine and paraphernalia associated with use of crack cocaine); Veren, 140 P.3d at 139 (opinion as to amount of pseudoephedrine required to manufacture methamphetamine requires specialized knowledge and is therefore an expert, not a lay, opinion); cf. United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994) (testimony regarding length of time it takes to grow a marijuana plant, the amount of marijuana it takes to make a cigarette and the amount of marijuana one could obtain from a single plant was properly admitted as expert testimony); People v.Â Davis, 2012 COA 56, Â¶46 (gangâs hierarchy, communication methods, and ideology were proper subjects of expert testimony); People v. Montalvo-Lopez, 215 P.3d 1139, 1143 (Colo. App. 2008) (testimony concerning modus operandi of drug traffickers was properly admitted as expert opinion testimony).

 Â¶40Â Â Â Â Â Â Â Â  But we review the erroneous admission of this testimony under a plain error standard because Ms. Douglasâs counsel failed to adequately object to either of Detective Browningâs improper statements. With respect to the detectiveâs opinion regarding the parts of the marijuana plant used to make edibles, Ms. Douglasâs lawyer declined to request a ruling on her objection, which amounts either to no objection at all, or, worse still, to an abandonment of the objection and a waiver of any right to assert error on appeal. See People v. Ridenour, 878 P.2d 23, 28 (Colo. App. 1994). As far as the detectiveâs statement that drug dealers commonly maintain separate production and distribution facilities, Ms. Douglasâs counsel objected to the testimony, but not on the same grounds asserted on appeal. See People v. Rogers, 2012 COA 192, Â¶24 (âAn issue is unpreserved for review when an objection or request wasÂ made to the trial court, but on different grounds than those raised on appeal.â).

 Â¶41Â Â Â Â Â Â Â Â  Plain error is error that is obvious and substantial, and that so undermined the fundamental fairness of the trial as to raise serious doubts about the reliability of the outcome. People v. Beilke, 232 P.3d 146, 152 (Colo. App. 2009). Where the improperly admitted lay testimony is cumulative of properly admitted expert testimony, there is no plain error. People v. Theus-Roberts, 2015 COA 32, Â¶31 (any error in admitting officerâs lay testimony concerning gunshot residue and fingerprint testing was harmless where testimony was cumulative of expertâs testimony); People v. Herdman, 2012 COA 89, Â¶72 (improper admission of lay opinion testimony concerning post-traumatic stress disorder was not plain error because experts on both sides testified about whether the defendant suffered from the condition).

 Â¶42Â Â Â Â Â Â Â Â  Following Detective Browningâs testimony, the prosecution endorsed Detective Murphy as an expert in the area of laboratory analysis of marijuana. On cross-examination by the co-defendantâs counsel, Detective Murphy testified, without objection, that theÂ leaves of the marijuana plant can be used to make edibles. (Q: âAnd certainly, the leaves can be used as edibles, also?â A: âThatâs correct. Yes.â) And on cross-examination from Ms. Douglasâs counsel, who sought to establish that officers had not located a separate distribution center, Detective Murphy reiterated that â[i]tâs not uncommon for a grow operation or some other illegal drug activity â meth lab, cocaine source â to take place here and be distributed over here.â Under the circumstances, admission of Detective Browningâs first and third statements could not have undermined the fundamental fairness of the trial, and therefore we discern no plain error.

 Â¶43Â Â Â Â Â Â Â Â  As to Detective Browningâs second statement ? that edibles are typically candies, sodas, brownies, and butter ? Ms. Douglasâs counsel again failed to object, but the failure is of no consequence because we conclude that the district court did not abuse its discretion in the first instance.

 Â¶44Â Â Â Â Â Â Â Â  Once the prosecution had established that edibles are âmarijuana-infused products that people eat or drink,â Detective Browningâs testimony providing examples of edibles was merely âtheÂ result of a process of reasoning (namely, use of common sense and logic) familiar in everyday life,â rather than a process of reasoning âwhich can be mastered only by specialists in the field.â Rincon, 140 P.3d at 983 (citation omitted); see also Ramos, Â¶13. Detective Browning did not assert that his list of common edibles was exhaustive; on cross-examination, he agreed that candies, sodas, brownies, and butter were simply âexamples,â and that edibles would include any âthings of that sort,â to which marijuana was added as an ingredient.

 Â¶45Â Â Â Â Â Â Â Â  As explained above, when Detective Browning offered details about the process for making edibles, he veered into expert opinion territory subject to CRE 702, but â[c]ertain basic information about a subject may fall within the scope of lay opinion testimony, even if more detailed discussion of the same area would require specialized knowledge.â People v. Tillery, 231 P.3d 36, 42 (Colo. App. 2009), affâd sub nom. People v. Simon, 266 P.3d 1099 (Colo. 2011). We are hard-pressed to conclude that an officerâs testimony that marijuana edibles include brownies and candies is based on specialized knowledge unfamiliar to ordinary people. Instead, this kind ofÂ testimony is akin to the challenged testimony in People v. Mollaun, 194 P.3d 411, 419-20 (Colo. App. 2008), where an officer testified that a drunk driving suspectâs pupils were dilated at the time of arrest. A division of this court concluded that an ordinary person could reasonably have come to such an opinion based on a process of reasoning familiar in everyday life.

 Â¶46Â Â Â Â Â Â Â Â  The same is true here. The district court did not abuse its discretion in admitting the testimony.

 B. Detective White

 Â¶47Â Â Â Â Â Â Â Â  Next, Ms. Douglas argues that testimony from Detective White identifying the plants in Ms. Douglasâs home as marijuana plants was erroneously admitted as lay testimony. Because Ms. Douglasâs counsel made a contemporaneous and specific objection, if we determine that the court abused its discretion, we review for harmless error. People v. Acosta, 2014 COA 82, Â¶75. We conclude that, on the record here, Detective Whiteâs ability to identify marijuana was based exclusively on his specialized knowledge as a police officer, and therefore he should have been qualified as an expert before he rendered his opinion. However, because Ms.Â Douglas admitted the plants were marijuana by presenting a medical marijuana affirmative defense, and other witnesses identified the plants as marijuana plants, the error was surely harmless.

 Â¶48Â Â Â Â Â Â Â Â  Detective White was part of the team that executed a search warrant at Ms. Douglasâs residence. Upon entry to the home, he saw a small grow tent containing a number of marijuana plants. He explained that he knew the plants were marijuana plants based on: (1) the 500 times he âha[d] seen marijuana as part of [his] jobâ; (2) the eighty-hour class he had attended in detecting and identifying marijuana, and the marijuana grow trainings he had attended; and (3) the 100 times he had âexecuted search warrants at houses where there were marijuana grows.â Defense counsel objected on the ground that Detective White had not been qualified as an expert.

 Â¶49Â Â Â Â Â Â Â Â  Our court has approved of lay witness identification of marijuana based on its appearance, taste, and distinctive smell when the witness can provide the proper foundation. People v. Graybeal, 155 P.3d 614, 619 (Colo. App. 2007). But the testimonyÂ must still comport with Rule 701, meaning that the lay opinion cannot be based on specialized knowledge. We agree with the People that the mere fact of Detective Whiteâs specialized knowledge and training did not preclude him from testifying as a lay witness, but only if he could have offered the same testimony without the benefit of his special knowledge and training. People v. Souva, 141 P.3d 845, 850-51 (Colo. App. 2005).

 Â¶50Â Â Â Â Â Â Â Â  Mollaun is again instructive. In that case, the officer undoubtedly had a greater opportunity than the average citizen to observe dilated pupils based on his position as a police officer who conducted drunk driving stops. But because the ability to identify dilated pupils is based on perception and observation, and within the ken of an ordinary person, the officerâs testimony was not dependent on his experiences and training as a police officer.

 Â¶51Â Â Â Â Â Â Â Â  In contrast, we cannot assume that the average citizen has the ability to identify a plant as marijuana. That is not to say that Detective White could not, under any circumstances, have testified on that subject as a lay witness. Like the witness in Graybeal, he could have provided the proper foundation if his knowledge ofÂ marijuana was based on his independent familiarity with marijuanaâs appearance, taste and smell. And, like the officer in Mollaun, if Officer White had established independent familiarity with marijuana, his lay opinion testimony would have been proper even though, as a police officer, he undoubtedly has a greater opportunity to observe marijuana than the average citizen. But, according to his testimony, his ability to identify marijuana arose, not from independent familiarity with marijuana, but solely from his specialized knowledge obtained through law enforcement training, including an eighty-hour class on the identification of marijuana. Accordingly, the district court erred in allowing him to offer lay opinion testimony identifying the marijuana plants in Ms. Douglasâs residence.

 Â¶52Â Â Â Â Â Â Â Â  The error, however, is harmless. Reversal under the harmless error standard is required only if the error âsubstantially influenced the verdict or affected the fairness of the trial proceedings.â Hagos v. People, 2012 CO 63, Â¶12 (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986)). At trial, Ms. Douglas did not seriously dispute that the plants in her house were marijuana. Ms. DouglasÂ presented an affirmative defense, meaning that she admitted to growing and using marijuana but claimed an exemption from the law based on her medical marijuana license. See People v. Whatley, 10 P.3d 668, 670 (Colo. App. 2000) (âAn affirmative defense is a defense that admits conduct leading to the act charged but seeks to justify, excuse, or mitigate that conduct.â). Her co-defendant, Mr. Crawford, testified extensively about the details of the marijuana grow at their residence, and provided information about Ms. Douglasâs preferred method of using marijuana. And Detective Murphy testified that, after conducting an analysis, he determined that the plants were marijuana. Thus, Detective Whiteâs identification of the plants as marijuana could not have substantially influenced the verdict.

 Â¶53Â Â Â Â Â Â Â Â  The district court did not commit reversible error in admitting the testimony of Detective Browning and Detective White.

 IV. Refusal to Qualify Expert Witness

 Â¶54Â Â Â Â Â Â Â Â  At trial, the defendants attempted to qualify Richard Wainwright as an expert in medical marijuana grows. Mr. Wainwright testified that in 2006, he formed two consultingÂ businesses and began to assist medical marijuana patients with the construction of medical marijuana grows. He did not indicate what he had done, if anything, prior to 2006 to acquire the knowledge necessary to provide those consulting services. Instead, he told the court that he was completely âself-taughtâ and had obtained all of his knowledge of medical marijuana grows from his own âon-the-job training.â Since 2006, he had constructed approximately fifty medical marijuana grows.

 Â¶55Â Â Â Â Â Â Â Â  In response to questioning by the prosecutor, Mr. Wainwright acknowledged that he did not have any formal education in botany or marijuana cultivation, and reiterated that he was entirely âself-taughtâ on the subject. Mr. Wainwright confirmed that he had no personal knowledge of, or opinion on, Ms. Douglasâs grow.

 Â¶56Â Â Â Â Â Â Â Â  The court inquired further as to Mr. Wainwrightâs proposed testimony, and defense counsel explained that, to rebut earlier testimony that the defendantsâ grow was atypical for a medical marijuana grow, Mr. Wainwright would educate the jury on the construction and maintenance of medical marijuana grows. The court refused to qualify Mr. Wainwright as an expert based on aÂ lack of foundation, noting, âAll I know is heâs been self-taught. I donât know what that means, because thereâs been no testimony to indicate to the Court what he did to teach himself about marijuana grows.â

 Â¶57Â Â Â Â Â Â Â Â  Ms. Douglas contends that the district court erred in refusing to qualify Mr. Wainwright as an expert in the operation and construction of medical marijuana grows based on his experience and on-the-job training.

 Â¶58Â Â Â Â Â Â Â Â  We review a trial courtâs decision to exclude expert testimony for an abuse of discretion, and will not overturn the courtâs ruling unless it is âmanifestly erroneous.â People v. Williams, 790 P.2d 796, 797-98 (Colo. 1990). This broad discretion âreflects the superior opportunity of the trial judge to gauge both the competence of the expert and the extent to which his opinion would be helpful to the jury.â Id. at 798 (citation omitted).

 Â¶59Â Â Â Â Â Â Â Â  Ms. Douglas argues that we should review any error under the constitutional harmless error standard, while the People contend that the issue is unpreserved and, therefore, plain error review applies. Because we discern no error, we need not resolve the dispute.

 Â¶60Â Â Â Â Â Â Â Â  As provided in CRE 702, â[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.â Rule 702 requires a ââbroadâ and âliberalâ inquiryâ into the admissibility of expert testimony.â Golob v. People, 180 P.3d 1006, 1011 (Colo. 2008) (quoting People v. Shreck, 22 P.3d 68, 77-78 (Colo. 2001)); see also People in Interest of Strodtman, 293 P.3d 123, 129 (Colo. App. 2011) (noting the CRE 702 has a âbroad scopeâ and should be liberally construed); People v. Jimenez, 217 P.3d 841, 866 (Colo. App. 2008) (â[T]he rules of evidence reflect a liberal approach to the admissibility of expert testimony.â). Under this rule, the critical inquiry is whether the proffered expert can provide appreciable help to the jury on the subject matter for which he is offered. Williams, 790 P.2d at 798.Â 

 Â¶61Â Â Â Â Â Â Â Â  In evaluating experience-based specialized knowledge, we must determine whether the evidence is âreasonably reliable information that will assist the trier of fact.â Brooks v. People, 975 P.2d 1105, 1114 (Colo. 1999), as modified on denial of rehâg (Apr. 12, 1999). To do so, we focus on two inquiries: (1) whether the testimony would be useful to the jury and (2) whether the witness is qualified to render an opinion on the subject. Salcedo v. People, 999 P.2d 833, 838 (Colo. 2000).

 A. Useful to the Jury

 Â¶62Â Â Â Â Â Â Â Â  Expert testimony is useful if the âproffered testimony will assist the fact finder to either understand other evidence or to determine a fact in issue.â People v. Ramirez, 155 P.3d 371, 379 (Colo. 2007), as modified on denial of rehâg (Apr. 16, 2007). Thus, whether the proffered testimony is useful âhinges on whether there is a logical relationâ between the testimony and the facts of the case. Id. In determining whether a proposed area of expert testimony would be useful to the jury, a court must find that the testimony is logically relevant under CRE 402 and not unduly prejudicial under CRE 403. Salcedo, 999 P.2d at 838. Evidence isÂ relevant, and therefore admissible under CRE 402, when it has âany tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.â CRE 401.

 Â¶63Â Â Â Â Â Â Â Â  The People contend that Mr. Wainwrightâs testimony was not helpful because it was undisputed that Ms. Douglas had a medical marijuana license and was growing marijuana, and therefore the appearance and construction of the grow was irrelevant. We disagree.

 Â¶64Â Â Â Â Â Â Â Â  As we have discussed, the prosecutionâs theory centered on three propositions, including that the defendants possessed distributable quantities of marijuana and that their grow operation was more sophisticated than an average medical marijuana grow.

 Â¶65Â Â Â Â Â Â Â Â  The defense proffered Mr. Wainwright to testify about the phases of marijuana plant development and the necessity for constructing a grow that could accommodate these different stages. His testimony was relevant to both of the prosecutionâs theories.

 Â¶66Â Â Â Â Â Â Â Â  First, the prosecution used the number of plants at the defendantsâ residence as one of its key pieces of evidence toÂ establish the quantity of marijuana possessed by Ms. Douglas and Mr. Crawford. The prosecution presented no evidence, however, on the amount of useable marijuana that twenty-eight plants would produce, and Mr. Crawford disputed that all of the plants were capable of producing marijuana, testifying instead that only two plants could be harvested per week.

 Â¶67Â Â Â Â Â Â Â Â  Mr. Wainwrightâs testimony about the phases of marijuana plant growth and development would have put the prosecutionâs evidence of the number of plants in context. By opining on the phases of marijuana growth and development, his testimony would have helped the jury understand how much useable and distributable marijuana would have been produced from twenty-eight plants, a fact which was in dispute and not clearly explained by either party. See Ramirez, 155 P.3d at 382 (âExpert testimony is most helpful to the jury when it assists the jury to weigh ambiguous evidence.â).

 Â¶68Â Â Â Â Â Â Â Â  Second, the prosecution also relied on the appearance and alleged sophistication of defendantsâ grow to prove the intent toÂ distribute. Essentially, the prosecution argued that the defendantsâ marijuana grow did not look like a medical marijuana grow.

 Â¶69Â Â Â Â Â Â Â Â  Mr. Wainwrightâs testimony would have provided the jury with additional information about the features and qualities of a medical marijuana grow and whether a medical marijuana grow generally differs from, or is similar to, a nonmedical marijuana grow.

 Â¶70Â Â Â Â Â Â Â Â  The subject of Mr. Wainwrightâs testimony was relevant, and would have been useful to the jury, because there was a logical connection between the proffered testimony and disputed facts in the case.

 B. Qualifications

 Â¶71Â Â Â Â Â Â Â Â  For Mr. Wainwrightâs testimony to be admissible, however, he must also be qualified as an expert witness. Under CRE 702, an expert witness may be qualified through any of the five enumerated factors: knowledge, skill, experience, training, or education. Huntoon v. TCI Cablevision of Colo., Inc., 969 P.2d 681, 690 (Colo. 1998). Indeed, in accordance with this âliberal qualification standard,â Golob, 180 P.3d at 1012, â[t]here is no requirement that a witness hold a specific degree, training certificate, accreditation,Â or membership in a professional organization, in order to testify on a particular issue.â Huntoon, 969 P.2d at 690. However, an expert witness must still provide âan understandable explanation of [his or] her qualifications.â People v. Tidwell, 706 P.2d 438, 439 (Colo. App. 1985). Mr. Wainwright did not provide this explanation.

 Â¶72Â Â Â Â Â Â Â Â  Although Mr. Wainwright testified that he had experience building medical marijuana grows, he did not explain how he obtained his expertise in this field. According to Mr. Wainwright, in 2006 he suddenly began constructing marijuana grows. From there, he says, he acquired superior skill through on-the-job training. But what the district court wanted to know â and what it was entitled to know â was the basis of Mr. Wainwrightâs knowledge of the construction of marijuana grows.

 Â¶73Â Â Â Â Â Â Â Â  Mr. Wainwrightâs only answer was that he was self-taught. We agree with the district court that, if a proposed expert is âself-taught,â he must provide some indication of âwhat he did to teach himselfâ to establish a sufficient foundation for his qualifications. Mr. Wainwright provided no information about the genesis of his knowledge and skills. He did not testify about any pre-2006 experience with marijuana grows, including informal opportunities to learn from others already established in the field. Nor did he refer to books or articles he had read, or trainings or classes he had attended. In short, he failed to provide any basis from which the court could evaluate the reliability of his knowledge.

 Â¶74Â Â Â Â Â Â Â Â  When an expert bases his qualifications solely on self-taught experience, he must âexplain[] what that experience is or how his expertise grew from it.â 523 IP LLC v. CureMD.Com, 48 F. Supp. 3d 600, 647 (S.D.N.Y. 2014) (rejecting proffered expert who asserted he was self-taught but âfail[ed] to elaborate how or what [he] âself-taughtâ in order to gain expertiseâ); see also Taylor v. Watters, 655 F. Supp. 801, 805 (E.D. Mich. 1987) (To be qualified as a self-taught expert, the expert must provide sufficient information so that the court has a âway to determine the extent or depth of the proposed expertâs self-study.â).

 Â¶75Â Â Â Â Â Â Â Â  We recognize that under Rule 702, an expert may be qualified by experience alone. See People v. Bornman, 953 P.2d 952, 955 (Colo. App. 1997) (finding licensed automobile dealer qualified as an appraisal expert where he had appraised thousands of cars and hadÂ twelve years of experience); Colorado Arlberg Club v. Bd. of Assessment Appeals, 719 P.2d 371, 374 (Colo. App. 1986) (holding that agency erred in refusing to qualify appraisal expert who was a part owner of an appraisal business with seven years of experience), revâd on other grounds, 762 P.2d 146 (Colo. 1988); Town of Red Cliff v. Reider, 851 P.2d 282, 285 (Colo. App. 1993) (finding expert qualified because he had been in the relevant business for a number of years and gained experience working under the supervision of others in the field). Experience-based specialized knowledge, however, âremains subject to an inquiry regarding validity and reliability.â Brooks, 975 P.2d at 1114. In all cases, even where expertise is based on experience alone, the trial court must maintain its role as a gatekeeper to ensure that âspecialized testimony is reliable, relevant, and helpful to the jury.â Allen v. Martin, 203 P.3d 546, 570 (Colo. App. 2008) (quoting People v. Prieto, 124 P.3d 842, 849 (Colo. App. 2005)). âWhile experienced-based testimony may invoke different reliability considerations than scientific testimony, the court must still determine whether theÂ witness is qualified to render an expert opinion.â Id. (citation omitted).

 Â¶76Â Â Â Â Â Â Â Â  Without any testimony explaining how Mr. Wainwright learned about medical marijuana grows, the court had no basis to determine that his testimony was reliable. Therefore, the district court did not abuse its discretion in refusing to qualify him as an expert witness under CRE 702. See United States v. Kelley, 6 F. Supp. 2d 1168, 1184 (D. Kan. 1998) (rejecting proposed expert on growing marijuana who âlack[ed] any academic background, formal education or training, and experienceâ besides âself-directed effortsâ because âthere must be a foundation from which the court can findâ that the expertâs âtestimony is reliable as a result of these self-directed effortsâ); cf. Hansen v. State Farm Lloyds, No. Civ. A. H-01Â­1457, 2002 WL 34363619, at *2 (S.D. Tex. Apr. 12, 2002) (unpublished opinion) (âSimply being hired eight hundred times does not make one an expert if one does not have the training and expertise in the first place.â).

 V. Conclusion

 Â¶77Â Â Â Â Â Â Â Â  The judgment is affirmed.Â 

 JUDGE TAUBMAN AND JUDGE J. JONES concur.


 [1] Counsel and witnesses generally referred to the process of growing marijuana, including the plants and the equipment necessary to maintain them, as a âgrowâ â a term we adopt for this opinion.

 [2] Although the term âcertificationâ does not appear in the Amendment, we use the term because it appears in the title of the document that must be completed by a physician and submitted to the health department to obtain a registry identification card. See People v. Fioco, 2014 COA 22, Â¶2 n.1.

 [3] Ms. Douglasâs briefing assumes that she and Mr. Crawford each possessed half the plants found at the residence. At oral argument, her counsel confirmed that Ms. Douglas does not dispute that she possessed fourteen plants.

 [4] Mr. Crawford did dispute that all twenty-eight plants were mature. He testified that six of the plants were âunder the 8 inch limit,â presumably referencing the legal definition of âimmature plant,â on which the jury was instructed, which provides that an âimmature plantâ is âa nonflowering medical marijuana plant that is no taller than eight inches and no wider than eight inches . . . .â Ms. Douglas contends for the first time in her reply brief that the Amendment is ambiguous as to whether immature plants are included in the total lawful amount of plants a patient may possess. We decline to address this argument as we do not consider arguments raised for the first time in a reply brief. People v. Grant, 174 P.3d 798, 803 (Colo. App. 2007). We note, however, that in her opening brief, Ms. Douglas concedes that the police âfound twenty-eight marijuana plants growing on the property.â




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 22, 2015


Back