The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 25, 2022

**2022COA95**

**No. 19CA1317, *People v. Vergari* — Juries — Challenges for Cause — Peremptory Challenges**

As a matter of first impression, a division of the court of appeals holds that a defendant waives a claim of error arising from the denial of a challenge for cause to a juror when the defendant declines to excuse that juror with a peremptory challenge and does not exhaust their peremptory challenges.

COLORADO COURT OF APPEALS     **2022COA95**

Court of Appeals No. 19CA1317
Jefferson County District Court No. 18CR3024
Honorable Christopher C. Zenisek, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brian Paul Vergari,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TOW
Dailey and Berger, JJ., concur

Announced August 25, 2022

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Elyse Maranjian, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Brian Paul Vergari appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault.  This appeal requires us to answer the following question left open by the Colorado Supreme Court in *People v. Abu-Nantambu-El*, 2019 CO 106: Does a defendant waive a claim of error arising from the denial of a challenge for cause to a juror when the defendant declines to excuse that juror with a peremptory challenge and does not exhaust their peremptory challenges?  *See id.* at ¶ 38 n.7.  Because we answer that question in the affirmative, we decline to address Vergari's challenge to the makeup of the jury.  And because we reject Vergari's other contentions, we affirm the judgment.

## I.    Background

¶ 2    The following evidence was presented at trial.

¶ 3    Vergari was involved in a road rage incident with Ruben Miscles.  Miscles pulled into a Home Depot parking lot, and Vergari followed.  Miscles stopped his truck in the middle of an aisle in the lot, and both men got out of their vehicles and began yelling at each other.  When Miscles turned around to get back into his truck, Vergari lunged at him and hit him in the head with a wrench.  Home Depot's video surveillance captured the incident.

1

¶ 4    When interviewed by the police afterward, Vergari claimed that Miscles had pushed him, and then he "blacked out." According to the officer,

> [Vergari] said that after that, the other driver was walking away from him heading back to his truck, and . . . that he was not moving fast enough for him, so Mr. Vergari pushed him from behind, and he realized that he had hit him in the back of the head with a wrench.

¶ 5    Vergari was charged with second degree assault as a crime of violence. He was convicted of the charge following a jury trial.

## II.    Denial of Challenge for Cause

¶ 6    Vergari contends that the trial court erred by denying his challenge for cause to a juror. We conclude that Vergari waived this contention.

¶ 7    During defense counsel's voir dire, Juror F.M. expressed hesitation with affording Vergari the presumption of innocence. Specifically, he said that he had not "heard enough of the case to decide" if Vergari was presumed innocent, and that "at this point" in the case, he could not presume Vergari was innocent. Based on these statements, defense counsel challenged Juror F.M. for cause. The trial court then spoke further with Juror F.M., explaining that

2

the burden of proof rested entirely on the prosecution, and that if that burden was not met, Vergari "must be found not guilty." Juror F.M. eventually agreed that if the prosecution failed to meet its burden, then he would find Vergari not guilty. The trial court then denied defense counsel's challenge for cause.

¶ 8 The trial court explained that "each side has the right to excuse up to five of the jurors without stating a reason." The prosecutor chose not to exercise any peremptory challenges. Defense counsel excused Juror I.G. The following exchange then occurred:

> [TRIAL] COURT: [Counsel], do you have a second peremptory challenge as to jurors one through thirteen?
>
> [DEFENSE COUNSEL]: I apologize. One moment, Your Honor. Your Honor, I will accept the jury as seated.
>
> [TRIAL] COURT: All right. So, does the defense then waive any further peremptory challenges as to jurors one through thirteen?
>
> [DEFENSE COUNSEL]: Yes.

Notably, defense counsel did not use any of the remaining peremptory challenges to remove Juror F.M. from the jury.

3

¶ 9     Vergari argues that the trial court abused its discretion by failing to grant his challenge for cause to Juror F.M.  The People respond that, because Vergari chose not to exercise his available peremptory challenges to excuse Juror F.M., he waived his claim that his right to a fair and impartial jury was violated.  As noted, this raises the question our supreme court previously left unresolved.  *Abu-Nantambu-El*, ¶ 38 n.7.[1]

¶ 10    Waiver is the intentional relinquishment of a known right or privilege.  *People v. Rediger*, 2018 CO 32, ¶ 39.  Waiver may be either express or implied.  *People v. Carter*, 2021 COA 29, ¶ 27.  A waived claim of error presents nothing for an appellate court to review.  *Id.* at ¶ 40.

¶ 11    Several other jurisdictions have concluded that a party waives their claim of error when they fail to use peremptory challenges to correct a denial of a challenge for cause.  *See, e.g.*, *State v. Patriarca*, 308 A.2d 300, 309 (R.I. 1973) ("While we find no error in the refusal to disqualify the challenged jurors, any objection is

---

[1] In *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 36, the Colorado Supreme Court held that the erroneous denial of a challenge for cause requires reversal if the challenged juror sits on a defendant's jury.

4

deemed waived where defendant's peremptory challenges remain unexhausted."); *Hammond v. Peden*, 278 S.W.2d 96, 98 (Ark. 1955) ("[I]f a litigant fails to exhaust his peremptory challenges he waives any error committe[d] by the court in failing to excuse a challenged juror."); *cf. Jordan v. United States*, 295 F.2d 355, 356 (10th Cir. 1961) ("By his failure to exercise any challenge for cause and by his use of only half of his peremptory challenges, the defendant has waived the right to complain that he was not tried by an impartial jury."); *Merritt v. Evansville-Vanderburgh Sch. Corp.*, 765 N.E.2d 1232, 1235 (Ind. 2002) (concluding that, in a case where the defendant exhausted her peremptory challenges, "a claim of error arising from denial of a challenge for cause is waived unless the appellant used any remaining peremptory challenges to remove the challenged juror or jurors").

¶ 12    Notably, the supreme court in *Abu-Nantambu-El* did not consider whether the error was waived or invited, apparently because the People did not pursue either theory. 2019 CO 106, ¶ 38 n.7. In his dissent, however, Justice Samour opined that when a defendant unsuccessfully challenges a juror for cause, and then chooses not to excuse that juror with a peremptory challenge,

5

"a classic example of waiver or invited error" arises. *Id.* at ¶¶ 40, 44 (Samour, J., dissenting). Justice Samour said that Abu-Nantambu-El should have been "precluded from obtaining relief on appeal" when he "argu[ed] that [a juror] was biased and should not be allowed to serve," and then "turned around and elected not to excuse her with one of his twelve peremptory challenges." *Id.* at ¶¶ 44, 50.

¶ 13    Here, the People argue that Vergari waived his claim. We find the above authorities, along with Justice Samour's analysis, persuasive. Vergari unsuccessfully challenged Juror F.M. for cause. But despite having five peremptory challenges, he exercised only one and chose to leave Juror F.M. on the jury. Vergari now complains that he was deprived of his right to a fair and impartial jury because Juror F.M., who was allegedly biased against him, served on his jury. But Vergari and his counsel undeniably knew that Juror F.M. — who they believed was biased — was in a position to serve on the jury. Yet, despite having five chances to remove Juror F.M., they made the strategic decision to not exercise four of those challenges and, instead, allowed Juror F.M. to serve. We conclude that to have these opportunities and to strategically

decide not to exercise them constitutes a "classic example" of an intentional relinquishment of a known right. *See id.*; *see also Rediger*, ¶ 39. Thus, we hold that by failing to remove Juror F.M. while not exhausting his peremptory challenges, Vergari waived his claim that the trial court erred by denying his challenge for cause.[2] We therefore decline to review it.

### III. Witness's Narration of Videos

¶ 14 Vergari next argues that the trial court reversibly erred by permitting a witness to narrate two video exhibits. We discern no basis for reversal.

¶ 15 At trial, the People called Craig Janson, a video forensics technician, to testify as an expert in forensic imaging. Before testifying, Janson cropped and enlarged a section of the Home Depot surveillance video to create two videos focusing on the altercation between Vergari and Miscles. The videos were admitted

---

[2] We note that our holding is limited to the factual situation before us: where Vergari did not exhaust his peremptory challenges. We do not address whether a defendant waives a claim that they did not receive a fair and impartial jury when they do exhaust all their peremptory challenges but choose not to exercise one to excuse the challenged juror (to the extent such an argument — if raised by the facts and presented by the People — might survive *Abu-Nantambu-El*).

7

into evidence and played for the jury.  As they played, the prosecutor asked Janson — who was not present during the altercation — to describe what was occurring in the videos.  Defense counsel objected, arguing that the jurors could determine for themselves what the videos depicted.  The trial court found that Janson could describe what the videos showed as "it's often necessary that the witness make a record as to what the exhibit is showing."

¶ 16     We review the trial court's evidentiary rulings for an abuse of discretion.  *People v. Meils*, 2019 COA 180, ¶ 11.  A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law.  *People v. Elmarr*, 2015 CO 53, ¶ 20.

¶ 17     "[W]e review nonconstitutional trial errors that were preserved by objection for harmless error."  *Hagos v. People*, 2012 CO 63, ¶ 12.  "[W]e reverse if the error 'substantially influenced the verdict or affected the fairness of the trial proceedings.'"  *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).  "[A]n objected-to trial error is harmless if there is no reasonable possibility that it

contributed to the defendant's conviction." *Pernell v. People*, 2018 CO 13, ¶ 22.

¶ 18   Under CRE 701, a lay witness may testify to opinions or inferences if they are (a) rationally based on the witness's perception; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. Lay opinion testimony is permitted under Rule 701 because "it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a firsthand witness to a particular event." *People v. McFee*, 2016 COA 97, ¶ 76 (quoting *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)). "A witness, lay or expert, may not form conclusions for jurors that they are competent to reach on their own." *Id.*

¶ 19   In these circumstances, it was improper for Janson to opine on the events shown in the recordings. He did not witness what occurred in the videos firsthand, have any personal knowledge about the video recordings or what they depicted, or provide a

unique or more informed perspective or understanding because of his expertise in forensic imaging. He was simply asked to narrate what the jurors themselves were contemporaneously viewing. In other words, he was in the same position as the jurors when it came to discerning what these videos depicted. He therefore should not have been permitted to provide any opinion about what the videos showed. *See id.* Instead, it was for the jurors to watch the videos and reach their own conclusion about what the videos depicted.[3]

¶ 20 Nevertheless, we conclude that any error was harmless. First, although Vergari argues that Janson's statements constituted expert testimony as to whether Vergari acted in self-defense, Janson's testimony was limited to simple and brief descriptions of what he observed in the videos. He provided no opinions about Vergari's actions or motivations during the altercation. Second, the jury watched the videos during Janson's testimony and had access

---

[3] The trial court found that his narration was necessary to "make a record" about what the videos showed. But this finding was misplaced; the videos were admitted and thus they — and what they showed — became part of the record. A narration simply for the sake of making a record was unnecessary.

10

to them during deliberations.  And third, the trial court explained that the "[t]he jury can view [the videos] and draw their own conclusions from [them]."  Thus, even though it was improper for Janson to narrate the videos as they played, the jury was free to disregard this opinion and come to its own conclusions, as the trial court explained.  *See id.* at ¶¶ 78-79 (concluding that, although a detective's opinion testimony about recordings was improper, "the jury had no reason to accept his opinion and could evaluate [the evidence] for itself" because "[t]he jury listened to both recordings and was instructed to come to its own conclusion" about what the recordings contained); *People v. Rodriguez*, 2021 COA 38M, ¶ 12 (reversible error did not occur where an officer testified about what he heard in a recording, but the jury "listened to each portion of the recording as the officer testified to what he heard, meaning the jurors could decide for themselves whether the officer's interpretation was accurate").

IV.    Preclusion of Impeachment on Cross-Examination

¶ 21    Vergari also contends that the trial court reversibly erred by precluding cross-examination of a witness about Miscles's aggressive character traits.  We disagree.

11

¶ 22   Miscles's wife, Rhonda John (who was a passenger in his truck during the altercation), testified at trial.  During direct examination, the following exchange occurred:

> PROSECUTOR: Looking at your husband's actions, was there anything that he did that would cause the other driver, from your perspective, to be concerned for their safety?
>
> JOHN: No.
>
> PROSECUTOR: Why not?
>
> JOHN: I mean, just knowing [Miscles] is not an aggressive person.
>
> PROSECUTOR: Okay.  But from what you saw, let's say you didn't know [Miscles].  What you saw between the two men, did [Miscles] do anything physically or verbally that would have put the other driver in fear of his safety?
>
> JOHN: No.  I mean, I don't believe so.  I mean, he didn't have anything in his hand.  He wasn't balling up his fist or coming at him aggressively.  He was — he didn't charge at the other driver.

¶ 23   Based on John's statement that Miscles "is not an aggressive person," Vergari's defense counsel told the trial court that she wished to cross-examine John about the fact that a coworker had allegedly accused Miscles of sexual and physical assault.  The trial court precluded this inquiry, finding that the prosecutor's question

12

"did not elicit that kind of response," and "under [CRE] 403, going into any other acts of violence committed by the victim here is of virtually no probative value, and the danger of unfair prejudice . . . would be great."

¶ 24   "[W]e will not disturb a trial court's ruling on the scope and limits of cross-examination absent an abuse of discretion." *People v. Margerum*, 2018 COA 52, ¶ 30, *aff'd on other grounds*, 2019 CO 100. But even assuming, without deciding, that the trial court abused its discretion by precluding the inquiry, we conclude that any error was harmless.[4]

¶ 25   After John's brief comment, the prosecutor immediately redirected her testimony to focus on what John witnessed in the altercation between Vergari and Miscles. And at no point throughout the trial did the prosecutor argue that Miscles did not have an aggressive character.[5] Furthermore, during the trial, the

---

[4] Vergari does not argue that this minimal restriction on the scope of his cross-examination of John interfered with his right to confront witnesses or would otherwise be subject to a constitutional harmlessness review.

[5] In both the opening and reply briefs, Vergari's appellate counsel claims that "the prosecution argued that Mr. Miscles was not aggressive." This is a misstatement of the record. Instead, the

prosecution presented overwhelming evidence of Vergari's guilt including Miscles's and John's testimony, Vergari's statements to police, and the surveillance videos depicting the altercation. We therefore conclude that any error the trial court may have committed by precluding defense counsel from rebutting John's statement that Miscles "is not an aggressive person" did not substantially influence the verdict or affect the fairness of the trial proceedings. *See Hagos*, ¶ 12.

## V. Prosecutorial Misconduct

¶ 26 Finally, Vergari argues that the prosecutor committed reversible misconduct during closing argument. While we agree that some of the prosecutor's arguments were improper, we conclude that they do not warrant reversal.

¶ 27 During closing argument, the prosecutor made the following comments:

- "[Mr. Miscles] is over this. But of course Mr. Vergari is not, because . . . he is the unreasonable person that we

---

prosecutor permissibly argued, in direct response to Vergari's affirmative defense of self-defense, that Miscles "was not the initial aggressor."

talked about in jury selection. He's angry. He wants to prove his point. If we asked the question, is it more important in life to be kind or right, Mr. Vergari would say right."

- "Mr. Vergari has to be right. He is that unreasonable person who has to be right and show [Mr.] Miscles that he is the one who is going to make — who is going to do what he's going to do, regardless. He wants to be right."

¶ 28    After the first comment, Vergari's counsel objected, arguing that "[t]here is no evidence of that, and that's an unfair inference to speculate what my client would say." The trial court neither expressly sustained nor overruled the objection but reminded the jury that "this is argument." Trial counsel did not object to the second comment.

¶ 29    We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct was improper based on the totality of the circumstances. *Id.* In doing so, we evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury.

15

*People v. Conyac*, 2014 COA 8M, ¶ 132. Next, we consider whether such actions warrant reversal under the applicable standard of review. *Wend*, 235 P.3d at 1096.

¶ 30 If the misconduct was objected to, but does not reach constitutional magnitude, we review for harmless error. *Id.* at 1097. We reverse "only if we conclude that error occurred and that there is a reasonable probability that the error contributed to the guilty verdict." *People v. Gonzales*, 2017 COA 62, ¶ 26.

¶ 31 If a defendant failed to object at trial, we review for plain error. *Wend*, 235 P.3d at 1097. Plain error is error that is obvious and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14. "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal" under the plain error standard. *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)).

¶ 32 In closing arguments, "[p]rosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom." *People v. Samson*, 2012 COA 167, ¶ 31. But

prosecutors may not refer to facts not in evidence. *People v. Denhartog*, 2019 COA 23, ¶ 58. And "[w]hile a prosecutor may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, [she] may not thereby induce the jury to determine guilt on the basis of passion or prejudice, attempt to inject irrelevant issues into the case, or accomplish some other improper purpose." *Id.* at ¶ 61.

¶ 33 Vergari argues that the prosecutor's comments were not based on facts in evidence and referred to improper character evidence. We agree that the repeated references to Vergari's tendency to be unreasonable or desire to be "right" were improper. While oratorical embellishments are permissible, they still must be rooted in the evidence that was presented at trial. These references were not supported by such evidence. Nevertheless, the comments do not warrant reversal.

¶ 34 To the extent that Vergari's argument on appeal is that the trial court impermissibly allowed the prosecutor to comment on facts not in evidence, that contention was at least arguably

preserved as to the first comment.[6] We thus review for harmless error. Here, there is no probability that the first statement contributed to the guilty verdict. The comment was brief and not overly inflammatory. After Vergari's counsel objected, the trial court reminded the jury that this was only argument. And given the overwhelming evidence of guilt, it was unlikely to have had a material role in Vergari's conviction. *See People v. Hogan*, 114 P.3d 42, 55 (Colo. App. 2004) (Determining whether misconduct is harmless requires a court to evaluate "the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct

---

[6] Though the People contend that Vergari failed to preserve his claim that the prosecutor improperly urged the jury to convict Vergari based on his bad character, they do not address whether Vergari preserved his claim that the prosecutor improperly argued facts not in evidence. It is not entirely clear that Vergari did preserve this issue, as he objected but did not actually press for a definitive ruling from the trial court. *See People v. Douglas*, 2015 COA 155, ¶ 40 (noting that the defendant's counsel "declined to request a ruling on her objection, which amounts either to no objection at all, or, worse still, to an abandonment of the objection and a waiver of any right to assert error on appeal"). Nevertheless, because the People do not argue that Vergari waived or otherwise failed to preserve this claim, we treat it as preserved.

constituted a material factor leading to the defendant's conviction.").

¶ 35 Vergari's remaining contentions — that, in the second statement, the prosecutor argued facts not in evidence and that both statements were an improper commentary on Vergari's bad character — were not preserved and are thus reviewed for plain error. The statements, while improper, were not "flagrantly, glaringly, or tremendously" so. *Avila*, 944 P.2d at 676 (quoting *People v. Vialpando*, 804 P.2d 219, 224 (Colo. App. 1990)). Nor do they "cast serious doubt on the reliability of the jury's verdict." *See Domingo-Gomez*, 125 P.3d at 1053 (citing *Miller*, 113 P.3d at 750). Therefore, we discern no reversible error.

## VI.  Disposition

¶ 36 The judgment is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.